2004 ND 55

**Betty GROLEAU, Plaintiff and Appellant,**

v.

**BJORNSON OIL COMPANY, INC., a North Dakota corporation, and Amoco Oil Company, a Maryland corporation, Defendants and Appellees.**

No. 20030171.

Supreme Court of North Dakota.

March 23, 2004.

Steven L. Latham, Wheeler Wolf, Bismarck, N.D., for plaintiff and appellant.

Joel A. Flom (argued) and James J. Ranheim (on brief), Jeffries, Olson & Flom, P.A., Moorhead, MN, for defendant and appellee Bjornson Oil Co.

Steven A. Storslee (argued) and Chris A. Edison (on brief), Storslee Law Firm, P.C., Bismarck, N.D., for defendant and appellee Amoco Oil Co., Inc.

KAPSNER, Justice.

[¶ 1] Betty Groleau appeals from a summary judgment dismissing her claims against Bjornson Oil Company ("Bjornson") and Amoco Oil Company ("Amoco"). We affirm the dismissal of Groleau's claims against Amoco but reverse the dismissal of her claims against Bjornson, concluding there are genuine issues of material fact precluding summary judgment in favor of Bjornson.

## I

[¶ 2] On August 26, 1999, Groleau and her husband were traveling through Devils Lake, North Dakota, on vacation. At approximately 4:30 in the afternoon, they stopped to fill their pickup with gas at a gas station owned by Bjornson. There were three raised gas pump islands in front of the station, and the Groleaus stopped at the one farthest from the station. Groleau went inside the station to use the restroom and pay for the gas while her husband filled the pickup.

[¶ 3] When Groleau left the station, she walked back towards the pickup and tripped over the first gas pump island. Groleau claimed that the sun was directly in her eyes, she was wearing sunglasses, there were shadows camouflaging the edge of the island, and the black edge of the island "blended in" and looked level with the surrounding area. Groleau injured her left elbow and leg and was taken by ambulance to a Devils Lake hospital. She was subsequently transferred to a Minot hospital for surgery to her elbow.

[¶ 4] Groleau brought this premises liability action against Bjornson and Amoco, alleging negligence in failing to properly light the area, in painting the edge of the island black, and in failing to warn of a known hazard. Following discovery, Bjornson and Amoco moved for summary judgment, claiming the danger of the raised island was open and obvious and they therefore had no duty to warn. Amoco also argued it owed no duty to Groleau because it had no control over the premises. The district court concluded that Amoco had no control over the premises and that the condition of the gas pump island was open and obvious, and Bjornson and Amoco accordingly owed no duty to Groleau. Judgment was entered dismissing Groleau's claims, and she appealed.

## II

[¶ 5] Summary judgment under N.D.R.Civ.P. 56 is a procedural device for promptly and expeditiously disposing of an action without a trial if either party is entitled to judgment as a matter of law and no dispute exists as to either the material facts or the reasonable inferences to be drawn from undisputed facts, or if resolving the factual disputes will not alter the result. *Fish v. Dockter*, 2003 ND 185, ¶ 7, 671 N.W.2d 819; *Northern Plains Alliance, L.L.C. v. Mitzel*, 2003 ND 91, ¶ 8, 663 N.W.2d 169. The party seeking summary judgment has the burden of showing that there is no genuine issue of material fact and that, under applicable principles of substantive law, the party is entitled to judgment as a matter of law. *Collette v. Clausen*, 2003 ND 129, ¶ 6, 667 N.W.2d 617. In considering a motion for summary judgment, the court must view the evidence in the light most favorable to the party opposing the motion, and that party must be given the benefit of all favorable inferences which can reasonably be drawn from the evidence. *Skjervem v. Minot State Univ.*, 2003 ND 52, ¶ 4, 658 N.W.2d 750. Even undisputed facts do not justify summary judgment if reasonable differences of opinion exist as to the inferences to be drawn from those facts. *Pierce v. B.P.O. of Elks Lodge No. 1214*, 2004 ND 26, ¶ 8, 673 N.W.2d 914.

[¶ 6] Negligence actions are ordinarily inappropriate for summary judgment because they involve issues of fact. *Iglehart v. Iglehart*, 2003 ND 154, ¶ 11, 670 N.W.2d 343; *Stanley v. Turtle Mountain Gas & Oil, Inc.*, 1997 ND 169, ¶ 8, 567 N.W.2d 345. Actionable negligence consists of a duty on the part of an allegedly negligent party to protect the plaintiff from injury, a failure to discharge that duty, and a resulting injury proximately caused by the breach of the duty.

*Grewal v. North Dakota Ass'n of Counties,* 2003 ND 156, ¶ 9, 670 N.W.2d 336; *Iglehart,* at ¶ 11. To establish a cause of action for negligence, the plaintiff must show the defendant had a duty to protect the plaintiff from injury. *Grewal,* at ¶ 9. Whether a duty exists is generally a preliminary question of law for the court. *Grewal,* at ¶ 9; *Iglehart,* at ¶ 11. However, if the existence of a duty depends upon the resolution of factual issues, the facts must be resolved by the trier of fact. *Grewal,* at ¶ 9; *Iglehart,* at ¶ 11; *Collette,* 2003 ND 129, ¶ 12, 667 N.W.2d 617. Issues of fact may become issues of law for the court if reasonable persons could reach only one conclusion from the facts. *Collette,* at ¶ 12; *Hurt v. Freeland,* 1999 ND 12, ¶ 9, 589 N.W.2d 551. When the existence of duty requires resolution of factual disputes, however, summary judgment is inappropriate and the proper procedure is for the court to instruct the jury as to the defendant's duty, or absence of duty, if certain facts are found. *Butz v. Werner,* 438 N.W.2d 509, 511 (N.D.1989); *Barsness v. General Diesel & Equip. Co.,* 383 N.W.2d 840, 843 (N.D.1986); Restatement (Second) of Torts § 328B, Comment e (1965).

### III

[¶ 7] Amoco contends that it had no control over the premises where Groleau's injury occurred and accordingly owed no duty to protect or warn Groleau.

[¶ 8] Resolution of this issue requires an examination of the contractual relationships involved. Amoco had a written contract with Gouldings, Inc., a North Dakota jobber, under which Amoco agreed to sell its products to Gouldings. In turn, Gouldings had an oral agreement with Bjornson to sell Amoco products to Bjornson for resale at Bjornson's gas station. Amoco had no contractual relationship with Bjornson.

[¶ 9] As part of Amoco's contract with Gouldings, retail stations which purchased Amoco products from Gouldings were permitted to use Amoco trade identities if Amoco gave prior written consent. The parties have designated such stations permitted to use Amoco marks as "branded" stations. Under the terms of the Amoco/Gouldings contract, the approval to use Amoco's trade identities was solely within Amoco's discretion and would be based upon various factors:

6. Site Approval.

(a) Use of Company's Trade Identities at each Approved Retail Site. It is and will be an on-going condition of the right to use Company's Trade Identities under this Contract, that Jobber must first obtain Company's prior written consent for each and every location that Jobber desires to identify with Company's Trade Identities, including all Jobber Marketer retail locations. The approval and designation as an Approved Retail Site will be within Company's sole discretion and will be based on certain factors and upon certain criteria relative to the site, including but not limited to: current or proposed appearance; current or proposed Trade Identities to be used; location of underlying real estate; ownership status of underlying real estate; current or proposed mode of operation; current or proposed offer; current or projected volume; current or proposed hours of operation; current or proposed training capabilities; current or proposed improvements, facilities or equipment; enrollment or participation in the Company's "mystery" shop program; Company's then current image programs and standards (both operational and visual), as amended; or Company's then current or amended retail

marketing strategies and development plans in the vicinity of the proposed location, or elsewhere.

Amoco retained the right to revoke its approval of a previously approved site for various reasons, but the contract expressly provided that Gouldings had the right to supply Amoco products to retail stations whose approval had been revoked or which had not been approved as a "branded" station.

[¶ 10] One of the factors Amoco could consider in determining whether to approve a retail site as a "branded" station was Amoco's visual image programs and standards. Amoco's approved color scheme and specifications directed that the base of elevated gas pump islands be painted black if the island had a steel curb form. The base of the island which Groleau tripped over was painted black as recommended in Amoco's specifications.

[¶ 11] Under premises liability law, a defendant must have had control over the property where the injury occurred in order to find the defendant owed a duty to an injured party. *Doan v. City of Bismarck*, 2001 ND 152, ¶ 13, 632 N.W.2d 815; *Stanley v. Turtle Mountain Gas & Oil, Inc.*, 1997 ND 169, ¶ 9, 567 N.W.2d 345. Control is an essential prerequisite for imposition of premises liability. *Doan*, at ¶ 13; *Stanley*, at ¶ 9. Before a defendant owes a duty of care, it must be demonstrated the defendant had control of the premises and an opportunity to observe any duty. *Stanley*, at ¶ 9.

[¶ 12] Groleau argues Amoco had control over the premises through its contract with Gouldings and was negligent in determining the base of the island should be painted black rather than a brighter, more visible color. The evidence presented in opposition to the motion for summary judgment, however, simply does not demonstrate any right by Amoco to control the premises. At most, the evidence shows Amoco reserved the right to approve use of its trade identities, and conformity to Amoco's approved color scheme was one factor in that decision. There is no indication that Amoco would have automatically revoked its approval of Bjornson's station if Bjornson had decided to paint the base of the island a different color for safety reasons. Furthermore, even if Amoco had revoked its approval, Amoco could not prevent Gouldings from continuing to supply Bjornson with Amoco products. Amoco retained control over its trade identities, but had no control over the premises where the injury occurred.

[¶ 13] Most importantly, Amoco had no contractual relationship with Bjornson. If Amoco had decided it wanted the base of the island painted a different color, it had no right, contractual or otherwise, to require Bjornson to do so. Thus, this case is distinguishable from a franchise agreement, where the parties may mutually agree and have an enforceable, contractual right to control use and appearance of the premises. Amoco's relationship to Bjornson and the premises is too tenuous to be considered "control" which would give rise to a duty to protect entrants upon the premises.

[¶ 14] Groleau has cited no caselaw or other relevant authority supporting her assertion that, under these circumstances, Amoco had control of the premises. We conclude the trial court correctly determined Amoco had no control of the premises and owed no duty to Groleau, and therefore summary judgment dismissing Groleau's claims against Amoco was appropriate.

IV

[¶ 15] Groleau contends the trial court erred in concluding that the condition of

the gas pump island was "open and obvious" as a matter of law and that Bjornson therefore owed no duty to protect Groleau.

[¶ 16] Under premises liability law, landowners owe a general duty to lawful entrants to maintain their property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to another, the seriousness of the injury, and the burden of avoiding the risk. *Green v. Mid Dakota Clinic*, 2004 ND 12, ¶ 8, 673 N.W.2d 257; *Doan v. City of Bismarck*, 2001 ND 152, ¶ 13, 632 N.W.2d 815; *Sternberger v. City of Williston*, 556 N.W.2d 288, 290 (N.D.1996); *see* Restatement (Second) of Torts § 343 (1965). The landowner has a right to use the property and develop it for profit and enjoyment, but when the landowner conducts dangerous activities or permits dangerous conditions to exist on the premises the landowner must take reasonable measures to prevent injury to those whose presence on the property reasonably can be foreseen. *Doan*, at ¶ 13; *see* Restatement (Second) of Torts § 343 (1965).

[¶ 17] A landowner's duty to protect entrants upon the land or warn of dangerous conditions is limited when the dangerous condition is known or obvious to the entrant. *Sternberger*, 556 N.W.2d at 290; Restatement (Second) of Torts § 343A (1965); *see also Iglehart*, 2003 ND 154, ¶ 17, 670 N.W.2d 343; *Collette*, 2003 ND 129, ¶ 27, 667 N.W.2d 617; *Morrison v. Grand Forks Hous. Auth.*, 436 N.W.2d 221, 224 (N.D.1989). As we noted in *Iglehart*, at ¶ 17 (quoting *Sternberger* at 290), "[w]here conditions are known and obvious, they 'cannot be viewed as pitfalls, traps or snares that would make conditions dangerous for a person exercising ordinary care.'"

[¶ 18] Section 343A of the Restatement outlines the general rule:

§ 343 A. Known or Obvious Dangers
(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

[¶ 19] The comments to § 343A clarify that a landowner may nevertheless owe a duty to entrants if the landowner should anticipate that the condition will cause harm notwithstanding the known or obvious nature of the danger:

There are, however, cases in which the possessor of land can and should anticipate that the dangerous condition will cause physical harm to the invitee notwithstanding its known or obvious danger. In such cases the possessor is not relieved of the duty of reasonable care which he owes to the invitee for his protection. This duty may require him to warn the invitee, or to take other reasonable steps to protect him, against the known or obvious condition or activity, if the possessor has reason to expect that the invitee will nevertheless suffer physical harm.

Such reason to expect harm to the visitor from known or obvious dangers may arise, for example, where the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it. Such reason may also arise where the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk. In such cases the fact that the danger is known, or is obvious, . . . is not . . . conclusive in determining the

duty of the possessor, or whether he has acted reasonably under the circumstances.

Restatement (Second) of Torts § 343A, Comment f (1965); *see also Johanson v. Nash Finch Co.*, 216 N.W.2d 271, 277 (N.D.1974).

[¶ 20] The trial court in this case determined that the dangerous condition of the elevated gas pump island was "open and obvious" as a matter of law. The dispositive issue on appeal is whether the dangerous condition was obvious as a matter of law.

[¶ 21] The determination whether a particular dangerous condition upon land is "obvious" is governed by an objective standard:

> "Obvious" means that both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising ordinary perception, intelligence, and judgment.

Restatement (Second) of Torts § 343A, Comment b (1965). The determination of whether a dangerous condition is open and obvious, limiting the landowner's duty, is generally a question of fact for the trier of fact, and becomes a question of law only when reasonable minds could reach but one conclusion. *See, e.g., Johanson*, 216 N.W.2d at 277–78; *Osontoski v. Wal–Mart Stores, Inc.*, 143 F.3d 1027, 1028–29 (6th Cir.1998); *Wasaya v. United Artist Theatre Circuit, Inc.*, 205 F.Supp.2d 756, 759 (E.D.Mich.2002); *Shows v. Mayfield Oil Co.*, 743 So.2d 465, 467 (Ala.Civ.App.1999); *Moultrie v. Consolidated Stores Int'l Corp.*, 764 So.2d 637, 639–40 (Fla.Dist.Ct. App.2000); *King v. NLSB*, 313 Ill.App.3d 963, 246 Ill.Dec. 757, 730 N.E.2d 1222, 1225–26 (2000); *Bundy v. Holmquist*, 669 N.W.2d 627, 633 (Minn.Ct.App.2003); *Tagle v. Jakob*, 97 N.Y.2d 165, 737 N.Y.S.2d 331, 763 N.E.2d 107, 110 (2001). The rule

is summarized in *Buchaklian v. Lake County Family Young Men's Christian Ass'n*, 314 Ill.App.3d 195, 247 Ill.Dec. 541, 732 N.E.2d 596, 602 (2000):

> Accordingly, "[t]he issue of whether a condition is obvious is determined by the objective knowledge of a reasonable person, not the plaintiff's subjective knowledge." *Menough v. Woodfield Gardens*, 296 Ill.App.3d 244, 248–49, 230 Ill.Dec. 760, 694 N.E.2d 1038 (1998). It is this court's opinion that summary judgment is not proper when reasonable minds could differ as to whether a condition was open and obvious and that such a determination involves a finding of fact even when a plaintiff admits that he or she could have seen the condition if he or she had looked. We determine in this case that, where plaintiff was an invitee and had to walk over a mat in order to utilize the YMCA pool facilities, and where plaintiff may not have seen a defect in the mat before she tripped, genuine issues of material fact exist as to whether the defect in the mat was an open and obvious danger that plaintiff should have seen. The "obviousness" of a condition or "[w]hether in fact the condition itself served as adequate notice of its presence or whether additional precautions were required to satisfy the defendant's duty are questions properly left to the trier of fact." *Ward [v. K Mart,]* 136 Ill.2d 132, 143 Ill.Dec. 288, 554 N.E.2d 223[, 234 (1990)].

[¶ 22] In reviewing whether a particular dangerous condition is obvious under § 343A, the surrounding circumstances must be considered. As noted by the court in *Simmons v. American Drug Stores, Inc.*, 329 Ill.App.3d 38, 263 Ill.Dec. 286, 768 N.E.2d 46, 51–52 (2002) (citation omitted):

In addressing the obviousness of a condition in the context of premises liability, the term "obvious" means that both the condition and the risk are apparent to and would be appreciated by a reasonable person in the plaintiff's position exercising ordinary perception, intelligence, and judgment. Conditions may exist which, though seemingly innocuous in themselves, indeed present an unreasonable danger under certain circumstances.

Addressing the "obviousness" issue under Restatement § 343A in a case in which a customer walked into a concrete post located just outside the entrance to a store, the court in *Ward v. K Mart Corp.*, 136 Ill.2d 132, 143 Ill.Dec. 288, 554 N.E.2d 223, 232 (1990) (citation omitted), stated:

> Turning to the specific facts of the present case, we agree with defendant and the trial court that there is nothing inherently dangerous about the post. It is just an ordinary post. The proper question, however, is not whether the post was inherently dangerous, but whether under the facts of this case, it was unreasonably dangerous. This question generally cannot be answered by merely viewing the condition in the abstract, wholly apart from the circumstances in which it existed. There may be many conditions on a person's premises which are in fact dangerous, but not "unreasonably" so for any of a number of reasons. For example, as discussed above, the defendant may have no reason to anticipate that an entrant on his premises will fail to see and appreciate the danger. But there may also be conditions which, though seemingly innocuous enough in themselves, indeed present an unreasonable danger under certain circumstances. For example, it may be said that there is ordinarily no unreasonable danger in an ordinary flight of stairs, but stairs may indeed be unrea-

sonably dangerous if, under the circumstances of a particular case, the defendant in the exercise of reasonable care should anticipate that the plaintiff will fail to see them.

Accordingly, it is not enough, as Bjornson contends, to say that all raised abutments are open and obvious to a person exercising ordinary perception and judgment; the surrounding circumstances must be considered in assessing the obviousness of the dangerous condition.

[¶ 23] In this case, Groleau testified in her deposition that the sun was directly in her eyes as she exited the station, shadows were camouflaging the edge of the island, and the black edge of the island blended in and looked level with the surrounding pavement. Pictures of the area, taken near the same time of day and allegedly depicting the area as it would have appeared at the time of Groleau's injury, were also submitted to the court. The trial court relied upon the pictures in determining that the dangerous condition was open and obvious as a matter of law. We have carefully reviewed the photographs and do not find them as decisive as did the trial court. Rather, our review of the photographs, coupled with Groleau's testimony, leads us to conclude that reasonable minds could draw differing inferences about the obviousness of the dangerous condition of the elevated gas pump island under the circumstances presented in this case.

[¶ 24] We conclude the trial court erred in determining that the dangerous condition of the elevated gas pump island was open and obvious as a matter of law, and that Bjornson therefore owed no duty to Groleau. Genuine issues of material fact remain which must be resolved by a jury, and the trial court erred in grant-

ing summary judgment dismissing Groleau's claims against Bjornson.

## V

[¶ 25]  We affirm that part of the judgment dismissing Groleau's claims against Amoco.  We reverse that part of the judgment dismissing Groleau's claims against Bjornson and remand for further proceedings.

[¶ 26] GERALD W. VANDE WALLE, C.J., DALE V. SANDSTROM, and WILLIAM A. NEUMANN, JJ., concur.

MARING, Justice, concurring in part and dissenting in part.

[¶ 27]  I concur in the majority opinion with exception to Part IV, from which I dissent, because I am of the opinion we should abolish the "open and obvious" doctrine and apply our modified comparative fault law.  I also dissent from the majority opinion because even if the Restatement (Second) of Torts § 343A (1965) is applied, it does not relieve a possessor of land of a duty to invitees merely because the condition is "obvious."

[¶ 28]  "Landowners owe a general duty to lawful entrants to maintain their property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to another, the seriousness of the injury, and the burden of avoiding the risk." *Doan v. City of Bismarck,* 2001 ND 152, ¶ 13, 632 N.W.2d 815.  "The existence of a duty is a question of law, unless it depends on facts that must be determined by the fact-finder." *Iglehart v. Iglehart,* 2003 ND 154, ¶ 11, 670 N.W.2d 343.

[¶ 29]  Our Court has held that assumption of the risk is no longer an affirmative defense, but is one part of the analysis of determining comparative fault. *Iglehart,*

2003 ND 154, ¶ 17, 670 N.W.2d 343.  "[Assumption of the risk] has presented courts with considerable difficulty in defining its theoretical justification and its relationship to tort duty limitations and to the defense of contributory negligence."  Michael K. Steenson, *The Role of Primary Assumption of Risk in Civil Litigation in Minnesota,* 30 Wm. Mitchell L.Rev. 115, 116 (2003).  Professor Michael Steenson points out that assumption of the risk has been applied inconsistently by courts and "[s]ometimes it seems to relate to the duty issue and sometimes it is linked to the defense of contributory negligence, but without a clear differentiation of which issue is involved." *Id.*

[¶ 30]  The North Dakota Legislature adopted comparative negligence in 1973 and modified comparative fault in 1987. *See* 1973 N.D. Sess. Laws ch. 78, § 1 (repealed by 1987 N.D. Sess. Laws ch. 404, § 13 as amended by 1993 N.D. Sess. Laws ch. 324, § 1); *and* 1987 N.D. Sess. Laws ch. 404.  Since the adoption of modified comparative fault, neither the Legislature nor our Court has expressly adopted as an accurate statement of our law, Sections 343 and 343A of the Restatement (Second) of Torts.  We also have not analyzed the effect of adopting comparative fault on the traditional "open and obvious" danger doctrine.

[¶ 31]  "[S]everal jurisdictions have concluded that the adoption of comparative negligence requires abolition of the 'no duty' rule providing that a possessor of land owes no duty to warn a person on the premises, such as an invitee or a licensee, of open and obvious dangers.  The rationale is that this rule is incompatible with comparative negligence principles, since its effect would be to resurrect contributory negligence, as an absolute bar to recovery in certain cases involving premises liability."  1 Comparative Negligence Manual

(CBC) § 1:15 (3d ed. & Supp.2003). The primary justification for abolishing the "open and obvious" danger doctrine as a "no duty" doctrine is that the adoption of comparative negligence did away with those common law devices which act as absolute bars to recovery. *Id.* Other jurisdictions have concluded the adoption of comparative negligence does not change the duty owed by a defendant to a plaintiff. *Id.*

[¶ 32] Before the adoption of comparative negligence and then comparative fault, it did not make any difference whether an obvious danger was viewed as negating a defendant's duty or whether it constituted contributory negligence or assumption of the risk. The result was the same; the plaintiff's recovery was barred. However, since the adoption of comparative negligence and comparative fault, "it makes a great difference how an obvious danger is viewed. If an obvious danger negates a duty, a defendant cannot be negligent. On the other hand, if a duty is not negated, then the obvious danger is a factor to be considered by the trier of fact in comparing the plaintiff's and defendant's negligence." *O'Donnell v. City of Casper,* 696 P.2d 1278, 1281–82 (Wyo.1985). The Supreme Court of Tennessee in *Coln v. City of Savannah,* 966 S.W.2d 34, 40 (Tenn. 1998), noted that "the open and obvious doctrine was widely criticized for producing arbitrary results and being 'wrong in policy.' ... An undeniable legal error is committed every time a court bars recovery to an injured person based solely on the fact that the perilous nature of the alleged cause of harm was 'apparent to all,' without any consideration of the multitude of other factors which may justify or excuse the plaintiff's conduct." *Id.* at 40–41 (citations and quotations omitted). The Tennessee Supreme Court further noted that these criticisms together with the adoption of comparative fault principles

have led "numerous jurisdictions to reconsider the open and obvious rule and to conclude that it should not automatically preclude recovery." *Id.* at 41, 41 n. 8 (collecting cases). The Mississippi Supreme Court abolished the "open and obvious" doctrine and applied comparative negligence in *Tharp v. Bunge Corp.,* 641 So.2d 20, 25 (Miss.1994). In doing so, it stated:

This Court should discourage unreasonably dangerous conditions rather than fostering them in their obvious forms. It is anomalous to find that a defendant has a duty to provide reasonably safe premises and at the same time deny a plaintiff recovery from a breach of that same duty. The party in the best position to eliminate a dangerous condition should be burdened with that responsibility. If a dangerous condition is obvious to the plaintiff, then surely it is obvious to the defendant as well. The defendant, accordingly, should alleviate the danger.

*Id.*

[¶ 33] Therefore, the common law "no duty" rule or "open and obvious" doctrine has endured much criticism from both courts and commentators. I am of the opinion that it is time to abandon the "open and obvious" doctrine as a duty concept and to hold it is simply an aspect of fault for the jury to consider. *See* Richard L. Ferrell, III, *Emerging Trends in Premises Liability Law: Ohio's Latest Modification Continues to Chip Away at Bedrock Principles,* 21 Ohio N.U.L.Rev. 1121, 1123 n. 18 (citing *"Harrison v. Taylor,* 115 Idaho 588, 768 P.2d 1321, 1324 (1989) (stating that there are no significant differences between the open and obvious danger doctrine and implied assumption of risk); *Id.* at 1328 (abolishing the open and obvious danger doctrine in favor of an ordinary care under the circumstances

test); *Carter v. Union R.R.*, 438 F.2d 208, 212 (3d Cir.1971) (stating that the Federal Employer's Liability Act, 45 U.S.C. [§ ] 54 (1908), eliminated assumption of risk, and the Restatement (Second) of Torts [§ ] 343A open and obvious danger doctrine would not be strictly applied); ... *Woolston v. Wells*, 297 Or. 548, 687 P.2d 144, 146–49 (1984) (stating that an open and obvious danger standard would not control in assessing comparative fault); *O'Donnell v. City of Casper*, 696 P.2d 1278, 1284 (Wyo.1985) (holding that an obvious danger does not negate a duty, but may simply be considered by the jury in assessing plaintiff's contributory negligence); *Parker v. Highland Park, Inc.*[,] 565 S.W.2d 512, 518–21 (Tex.1978) (stating that the 'no-duty' rule/open and obvious danger doctrine was incompatible with the state's comparative negligence statute, and the doctrine was only relevant to plaintiff's contributory negligence)."); *and id.* at 1133 n. 84 (citing "*Zambito v. Southland Recreation Enterprises, Inc.*, 383 So.2d 989, 991 (Fla.Dist.Ct.App.1980) (stating that the entrant's knowledge of the danger would be relevant to his own comparative negligence, but would not be an absolute bar to recovery)."); *and Rockweit v. Senecal*, 197 Wis.2d 409, 541 N.W.2d 742, 748–49 (1995) (stating that the Wisconsin Supreme Court's opinions in *Pagelsdorf v. Safeco Ins. Co.*, 91 Wis.2d 734, 284 N.W.2d 55 (1979) and *Antoniewicz v. Reszczynski*, 70 Wis.2d 836, 236 N.W.2d 1 (1975) abrogated the open and obvious doctrine).

[¶ 34] I am further of the opinion that a landowner's general duty of reasonable care extends to the risk from an open and obvious condition encountered by an invitee. This approach is consistent with the adoption of comparative fault and the abolishment of assumption of the risk as a complete defense and its merger into contributory negligence or fault of the invitee. It is also consistent with a reasonably careful landowner foreseeing that an invitee might fail to see the obvious condition, might be distracted, might encounter it despite knowing of it, or might forget the obvious condition exists. The rationale for comparative fault is to abolish all absolute defenses and to compare fault of the parties involved for all determinations of liability. *See Harfield v. Tate*, 1999 ND 166, ¶ 12, 598 N.W.2d 840 (stating the doctrine of distracting circumstances is relevant in apportioning fault); *Ebach v. Ralston*, 510 N.W.2d 604, 610 (N.D.1994) (stating the sudden emergency doctrine is simply to be utilized in determining negligence); and *Haff v. Hettich*, 1999 ND 94, ¶ 14, 593 N.W.2d 383 (holding comparative fault superceded the common law rule imposing liability on the original tortfeasor for aggravation and injury by a physician's negligence). The "open and obvious" doctrine is in conflict with the comparative fault policy because it permits a landowner to escape liability even if at "fault" for the creation of the obvious dangerous condition.

[¶ 35] Although some states have expressly abolished the open and obvious doctrine after the adoption of comparative negligence, some follow the Restatement (Second) of Torts § 343A. *See Coln*, 966 S.W.2d at 41–42, 41 nn. 9–10 (collecting cases abrogating the doctrine altogether and those following the Restatement (Second) of Torts § 343A).

[¶ 36] In *Johanson v. Nash Finch Co.*, 216 N.W.2d 271, 277 (N.D.1974), our Court referred to the Restatement (Second) of Torts § 343A on "Known or Obvious Dangers," as having "a bearing on questions of assumption of risk and contributory negligence." Section 343A(1) of the Restatement states:

(1) A possessor of land is not liable to his invitees for physical harm caused to

them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

Restatement (Second) of Torts § 343A. Our Court concluded in *Johanson:*

> The jury in the instant case was told, in effect, that the existence of an obvious danger precluded recovery by the plaintiff. It should have been told that it had the duty to decide whether the defendant should have anticipated harm to invitees despite the obviousness, if any, of the danger.

*Johanson,* at 277–78. In *Johanson,* our Court also stated that Comment f under Subsection (1) of the Restatement (Second) of Torts § 343A was particularly relevant because it points out "there are cases in which the possessor of land can and should anticipate that a dangerous condition will cause physical harm to an invitee notwithstanding its obvious nature." *Johanson,* at 277. Comment f clarifies that in cases where there is reason to anticipate harm to the invitee and the danger is known or obvious, that knowledge and obviousness are important in determining whether the invitee is negligent or assumed the risk, but they are not "conclusive in determining the duty of the possessor, or whether he has acted reasonably under the circumstances." *Id.* (quoting Restatement (Second) of Torts § 343A, cmt. f). Comment f sets out four illustrations. Illustration number 3 is:

> 3. The A Drug Store has a soda fountain on a platform raised six inches above the floor. The condition is visible and quite obvious. B, a customer, discovers the condition when she ascends the platform and sits down on a stool to buy some ice cream. When she has finished, she forgets the condition, misses her step, falls, and is injured. If it is

found that this could reasonably be anticipated by A, A is subject to liability to B.

[¶ 37] In the present case, the negligence claim against Bjornson is based on a premises liability theory. Accordingly, under application of the Restatement (Second) of Torts, the first issue is whether Bjornson owes a duty to Groleau. Under Section 343A of the Restatement (Second) of Torts, Bjornson does not owe a duty to Groleau if the danger associated with tripping over the raised concrete island was either known or obvious, *unless the appellee landowner, Bjornson, should have anticipated the harm despite its known or obvious dangers. See* Restatement (Second) of Torts 343A(1) (emphasis added). According to the comments to Section 343A of the Restatement (Second) of Torts, "[t]he word 'known' denotes not only knowledge of the existence of the condition or activity itself, but also appreciation of the danger it involves. Thus, the condition or activity must not only be known to exist, but it must also be recognized that it is dangerous, and the probability and gravity of the threatened harm must be appreciated." Restatement (Second) of Torts § 343A, cmt. b. The trier of fact must determine if Groleau knew the raised concrete island existed and appreciated the danger involved. If the danger of tripping over the raised concrete island was not a "known" danger, then the trier of fact must consider whether there was an "obvious" danger. *Id.* Under Comment b to Section 343A(1) of the Restatement (Second) of Torts, a condition is not "obvious" unless "both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising ordinary perception, intelligence, and judgment." *Id.* "The rationale underlying the rule eliminating a duty where the dangers are

**776**

known or obvious is that 'no one needs notice of what he knows or reasonably may be expected to know.' " Steenson, *supra,* at 146 (quoting *Louis v. Louis,* 636 N.W.2d 314, 321–22 (Minn.2001) (quotation omitted)). Whether a condition is "obvious" is an objective standard. However, that does not end the inquiry. It then must be decided whether the landowner should nevertheless have anticipated the harm despite the known or obvious danger. Steenson, *supra,* at 146. In *Reimer v. City of Crookston,* 326 F.3d 957, 965 (8th Cir. 2003), the United States Court of Appeals for the Eighth Circuit concluded it was a jury issue as to whether the case fell within the Restatement (Second) of Torts § 343A "unless" clause.

[¶ 38] I agree and am of the opinion that if fact questions arise concerning the duty, they should be submitted to the trier of fact for resolution. "For example, while foreseeability, a critical determinant of duty, is usually not a jury issue, in close cases a jury may be asked whether a particular risk of injury was foreseeable" or whether the defendant had reason to anticipate that an entrant on his premises would fail to see and appreciate the condition. Steenson, *supra,* at 162. "Depending on the findings, the trial court decides whether the defendants owed a duty to the plaintiff." *Id.* A special verdict form could be used for this purpose. Finally, if the court finds that the landowner owed the invitee a duty, the jury or fact-finder should then be allowed to decide the breach issue and the comparative fault of the landowner and invitee for the invitee's injuries. *See id.* at 146. The issue in the present case would be whether Bjornson acted reasonably in painting the raised concrete edge of the island black. Therefore, under Section 343A of the Restatement (Second) of Torts, the duty of the property owner turns on whether the danger is obvious and whether the owner

should nonetheless have anticipated the injury. *See id.* This analysis is based on the duty as it is set forth in Section 343A of the Restatement (Second) of Torts.

[¶ 39] In summary, I would remand this case for the trial court to apply our modified comparative fault law merging the doctrine of "open and obvious" condition into contributory negligence. If the Restatement (Second) of Torts § 343A is to be applied, I would remand for a determination whether Bjornson owes a duty to Groleau and submit to the fact-finder whether Bjornson has breached that duty and, if so, the comparative fault of the parties, and what damages have been proximately caused therefrom.

[¶ 40] Accordingly, I respectfully dissent.

[¶ 41] MARY MUEHLEN MARING.