# IN THE SUPREME COURT
## STATE OF NORTH DAKOTA

---

### 2024 ND 155

---

Timothy Morales,                                              Plaintiff and Appellant

 v.

Weatherford U.S., L.P.;                                       Defendant and Appellee

 and

Wilhoit Properties, Inc., and Ruby Junewal;                            Defendants

---

### No. 20230110

---

Appeal from the District Court of Williams County, Northwest Judicial District, the Honorable Paul W. Jacobson, Judge.

AFFIRMED.

Opinion of the Court by Crothers, Justice, in which Chief Justice Jensen, and Justices McEvers and Tufte joined. Justice Bahr filed a concurring opinion.

Jeffrey S. Weikum (argued), Bismarck, ND, and Justin L. Williams (on brief), Corpus Christi, TX, for plaintiff and appellant.

Zachary R. Eiken (argued) and Amy M. Oster (appeared), Bismarck, ND, for defendant and appellee.

**Crothers, Justice.**

[¶1]    Timothy Morales appealed from a judgment entered after the district court granted summary judgment to defendant Weatherford U.S., L.P. dismissing Morales's claims against Weatherford. Morales also appealed the court's subsequent order denying his request the court adopt a stipulation between Morales and defendant Ruby Junewal. We reversed and temporarily remanded the case while retaining jurisdiction. We instructed the district court to enter a single judgment adjudicating all the claims and all the parties' rights and liabilities. *Morales v. Weatherford U.S.,* 2024 ND 81, ¶ 34, 6 N.W.3d 657. The court complied with our mandate. We now address Morales's argument the court erred by entering summary judgment dismissing his claims and conclude the court did not err in holding Weatherford owed no duty of care to Morales. We affirm the judgment dismissing with prejudice all the claims in this case.

I

[¶2]    The facts in this case are largely undisputed. On the evening of December 29, 2015, Morales was a pedestrian walking along the right side of a roadway within the Weatherford distribution facility located in Williston. At that time, Junewal was driving a motor vehicle within the facility. It was dark and snowing or had been snowing. Junewal's vehicle struck Morales while he was walking on the roadway owned by Weatherford, causing injuries to Morales. Additional facts will be discussed as they become relevant to our decision.

[¶3]    In 2019 Morales commenced this action alleging claims for negligence against Weatherford, Junewal, and Junewal's employer, Wilhoit Properties, Inc. Morales also asserted allegations of premises liability against Weatherford, alleging Weatherford was negligent by failing to install proper lighting on the premises, install road signs, or designate sidewalks near the road. The district court granted summary judgment in favor of Weatherford, concluding Weatherford did not owe Morales a duty of care. The court ultimately dismissed Morales's claims against Weatherford and all other defendants.

II

[¶4]    Morales argues the district court erred when it granted summary judgment in favor of Weatherford holding it did not owe him a duty of care. Our summary judgment standard of review is well established:

"In deciding whether the district court appropriately granted summary judgment, we view the evidence in the light most favorable to the opposing party, giving that party the benefit of all favorable inferences which can reasonably be drawn from the record. A party opposing a motion for summary judgment cannot simply rely on the pleadings or on unsupported conclusory allegations. Rather, a party opposing a summary judgment motion must present competent admissible evidence by affidavit or other comparable means that raises an issue of material fact and must, if appropriate, draw the court's attention to relevant evidence in the record raising an issue of material fact. When reasonable persons can reach only one conclusion from the evidence, a question of fact may become a matter of law for the court to decide. A district court's decision on summary judgment is a question of law that we review de novo on the record."

*Dahms v. Legacy Plumbing, LLC*, 2024 ND 53, ¶ 4, 5 N.W.3d 531 (quoting *Miller v. Nodak Ins. Co.*, 2023 ND 37, ¶ 12, 987 N.W.2d 369).

III

[¶5]   Morales brought claims against Weatherford for negligence and premises liability. The law concerning duty in the context of ordinary negligence is not the same as the law concerning duty in the context of premises liability. As a threshold matter, we must assess the nature of Morales's claims to determine the law applicable to each. Upon review, we conclude Morales's claims sound in premises liability as opposed to ordinary negligence and we address them in that manner.

[¶6]   "In effect, the difference between premises liability and ordinary liability is that in a premises liability case the defendant is alleged to have 'maintained a dangerous condition,' whereas in an ordinary liability case the defendant is alleged to have caused the dangerous condition." *Hutson v. Pate*, 216 N.E.3d 1085, 1093 (Ill. App. Ct. 2022).

[¶7]   A Texas court of appeals further explained:

"The lines between negligent activity and premises liability are sometimes unclear, since almost every artificial condition can be said to have been created by an activity. Nevertheless, a cause of action for premises liability is different from one for negligent activity. Recovery on a negligent activity theory requires that the person have been injured by or as a contemporaneous result of the activity itself rather than by a condition created by the activity. Negligence in the context of a negligent activity claim means simply doing or failing to do what a person of ordinary prudence in

the same or similar circumstances would have done or not done. Negligence in the premises liability context generally means failure to use ordinary care to reduce or eliminate an unreasonable risk of harm created by a premises condition which the owner or occupier of land knows about or in the exercise of ordinary care should know about. In short, unlike a negligent activity claim, a premises defect claim is based on the property itself being unsafe."

*City of El Paso v. Collins,* 440 S.W.3d 879, 887-88 (Tex. App. 2013) (cleaned up). *See also Reyes v. Brookshire Grocery Co.,* 578 S.W.3d 588, 591 (Tex. App. 2019) (stating premises liability is a branch of negligence law with different elements that define a property owner or occupant's duty with respect to those who enter the property). As made clear by the court in *Collins,* the nature of the plaintiff's claim must be determined from the complaint. 440 S.W.3d at 888 ("We will examine the pleadings to determine whether Appellees have alleged a negligent activity claim as asserted by the City.").

[¶8]    Here, Morales sued Weatherford for negligence and premises liability. The complaint makes clear that Morales's claim is about the condition of the premises. That is true even for the so-called negligence claims, where Morales asserted:

> *"Count 2-Negligence of Weatherford International, LLC*
> *Weatherford U.S. Holdings, LLC*
>
> Weatherford defendants were the owners/in possession of the Weatherford Distribution facility located at 611 37th Avenue SE, in Williston, North Dakota 58801.
>
> Plaintiff was an employee of Weatherford defendants during the time of the incident and on Weatherford defendants' premises with Weatherford defendants' knowledge and for their mutual benefit.
>
> A condition of Weatherford defendants' premises posed an unreasonable risk of harm because the roadway where the incident occurred was not well lit, lacked proper signage and lacked sidewalks for pedestrian use.
>
> Weatherford defendants knew or reasonably should have known of the condition of the premises. Weatherford defendants had a duty to use ordinary care to ensure that the premises did not present a danger to Plaintiff. This duty includes the duty to inspect and the duty to warn and cure. Weatherford defendants breached the duty of ordinary care in one or more of the following respects:
>
> a. failing to warn the Plaintiff of the condition;

3

b. failing to adequately warn driver of the condition;

c. failing to make the condition reasonably safe;

Additionally Weatherford defendants, were also negligent in one or more of the following respects:

a. in failing to install proper lighting on the premises to make pedestrians visible to vehicles;

b. in failing to install road signs assigning right of way which would permit pedestrians and vehicles to proceed in a lawful manner;

c. in failing to designate sidewalks to give the pedestrian sage [sic] passage over the driver using the roadway;

d. in negligently hiring, training and supervising employees.

As described herein, Weatherford defendants were negligent on the occasion in question and such negligence was proximate cause of Plaintiff's injuries and damages.

Each of the acts or omissions, whether taken singularly or in any combination constitutes negligence, negligence per se, and gross negligence which proximately caused the incident and injuries and other loses specifically set forth herein, all of which plaintiff suffered and which he will suffer in the future, if not for the remainder of his natural life, and the damages and other losses to the Plaintiff."

[¶9]   The property condition also is the centerpiece of Morales's premises liability claim, which states:

### "Count 4-Premises Liability Against Weatherford Defendants

Plaintiff repeats and incorporates herein the factual allegations stated above as if fully set out and repeated at length.

The Defendants' acts and omissions constitute a breach of the duty or [sic] ordinary care owed by the Defendants to Plaintiff. Furthermore, the Defendants knew or should have known that the condition of the premises created an unreasonable risk of harm to Plaintiff in one or more, but not limited to, the following ways:

a. in failing to install proper lighting on the premises to make pedestrians visible to vehicles;

b. in failing to install road signs assigning right of way which would permit pedestrians and vehicles to proceed in a lawful manner;

4

c. in failing to designate sidewalks to give the pedestrian sage [sic] passage away from vehicles using the roadway; and

d. in negligently maintaining the premises for safe ingress and egress for pedestrians."

Reading the complaint as a whole, and recognizing the condition of the property is the core claim asserted, we review the district court's grant of summary judgment through the lens of premises liability.

IV

[¶10] Morales argues Weatherford allowed dangerous conditions to exist on its property and had a duty of care to take reasonable measures to prevent him from being injured.

[¶11] Recovery under a theory of negligence requires a plaintiff to show the defendant owed a duty of care. *Groleau v. Bjornson Oil Co., Inc.*, 2004 ND 55, ¶ 6, 676 N.W.2d 763. Whether a duty exists is a legal question to be decided on the facts. *Id*. In a premises liability action, this Court explained:

> "[I]f the existence of a duty depends upon the resolution of factual issues, the facts must be resolved by the trier of fact. Issues of fact may become issues of law for the court if reasonable persons could reach only one conclusion from the facts. When the existence of duty requires resolution of factual disputes, however, summary judgment is inappropriate and the proper procedure is for the court to instruct the jury as to the defendant's duty, or absence of duty, if certain facts are found."

*Id.* (cleaned up).

[¶12] The Court in *Groleau* also spoke to a landowner's duty in a premises liability action:

> "Under premises liability law, landowners owe a general duty to lawful entrants to maintain their property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to another, the seriousness of the injury, and the burden of avoiding the risk. The landowner has a right to use the property and develop it for profit and enjoyment, but when the landowner conducts dangerous activities or permits dangerous conditions to exist on the premises the landowner must take reasonable measures to prevent injury to those whose presence on the property reasonably can be foreseen."

5

2004 ND 55, ¶ 16 (cleaned up). Despite that general duty, landowners are not absolute insurers of their property. *O'Leary v. Coenen,* 251 N.W.2d 746, 752 (N.D. 1977).

[¶13]   North Dakota has adopted and retained the open and obvious danger doctrine:

> "A landowner's duty to protect entrants upon the land or warn of dangerous conditions is limited when the dangerous condition is known or obvious to the entrant. As we noted in [*Iglehart v. Iglehart,* 2003 ND 154, ¶ 17, 670 N.W.2d 343, (quoting *Sternberger v. City of Williston,* 556 N.W.2d 288, 290 (N.D. 1996))], where conditions are known and obvious, they cannot be viewed as pitfalls, traps or snares that would make conditions dangerous for a person exercising ordinary care."

*Groleau,* 2004 ND 55, ¶ 17 (cleaned up).

[¶14]   "The determination of whether a dangerous condition is open and obvious, limiting the landowner's duty, is generally a question of fact for the trier of fact, and becomes a question of law only when reasonable minds could reach but one conclusion." *Groleau,* 2004 ND 55, ¶ 21. The interrelationship between the landowner's duty and an open and obvious danger was clearly articulated by the Appellate Court of Illinois:

> "Plaintiff first argues that whether a condition is open and obvious is a question of fact. As stated, whether a duty exists is a question of law, and this court has held that whether a condition is open and obvious is also a question of law where there is no dispute about the physical nature of the condition. However, where there is a dispute about the condition's physical nature, such as its visibility, the question of whether a condition is open and obvious is factual."

*Wilfong v. L.J. Dodd Constr.,* 930 N.E.2d 511, 520 (Ill. App. Ct. 2010) (cleaned up); *see also Choate v. Indiana Harbor Belt R.R. Co.,* 980 N.E.2d 58, 67 (Ill. 2012) ("Where there is no dispute about the physical nature of the condition, whether a danger is open and obvious is a question of law.").

A

[¶15]   The premises in this case is a private roadway. Morales asserts Weatherford had a duty to take reasonable steps to ensure pedestrians walking along the roadway were not injured. Whether the dangerous condition of the roadway is open and obvious informs our inquiry as to what duty, if any, Weatherford owed to Morales. The facts relevant to

6

Weatherford's duty and the issue of whether an open and obvious danger existed on the premises are not in dispute. Rather, as recognized by the district court, the disputed facts regard the need for signage, sidewalks, lighting, and the like, which "relate to breach, causation, and fault, and are immaterial to the threshold question of whether Weatherford owed Morales a duty as a matter of law." Therefore, Weatherford's duty to Morales is a legal question for the court and not a matter for remand and a jury determination.

[¶16]   The district court determined these facts were undisputed:

- "As of December 2015, a man camp was located on the west side of Weatherford Facility (the 'Weatherford Lodge'), and Weatherford's tubular running services building was located on the southeast side of the Weatherford Facility (the 'TRS Shop')."

- "The Weatherford Lodge and the TRS Shop were separated by approximately one-eighth of a mile, and a paved, double-lane roadway connected those buildings."

- "There was no sidewalk alongside that roadway at the times relevant to this action."

- "Morales is from Texas and began working for Weatherford in North Dakota in late 2012 or early 2013. Morales lived at the Weatherford Lodge for approximately two years prior to the accident at issue."

- "Morales walked along the roadway at the Weatherford Facility every day, twice a day, during the two years he lived at the Weatherford Lodge—once from the lodge to his job at the TRS Shop and back."

- "In walking on the roadway, Morales encountered vehicles on the roadway."

- "Morales testified he knew those vehicles posed an obvious danger."

- "Morales also testified he knew pedestrians walking on a roadway with no sidewalk should walk against traffic, *i.e.,* on the left side."

- "Morales testified he knew that rule existed to allow pedestrians to see oncoming traffic."

- "Morales, however, did not walk against traffic."

- "Morales testified he also knew that pedestrians should refrain from using their cellphones."

7

- "Nonetheless, Morales used his phone during such times."

- "Other than the night at issue, Morales never had any issue walking on that roadway."

- "On December 29, 2015, Morales performed a long shift offsite and then returned to the Weatherford Facility with his coworkers, where he was dropped off at the TRS Shop."

- "Morales was not on the clock at any relevant time."

- "Morales testified he decided to walk instead of waiting for a ride from his coworkers."

- "When Morales began walking on the roadway, it was dark, and it had been snowing throughout the day."

- "Morales testified there was about an inch of snow on the ground."

- "There is conflicting evidence about where Morales was on the roadway at the time of the accident."

- "Morales testified he was one foot from the right edge of the roadway."

- "Officer Rodney Dickerson, the police officer who responded to the accident, concluded Morales was in the middle of the road at the time of the accident."

- "It is, however, undisputed that Morales was not walking on the left side of the roadway."

- "Nothing prevented Morales from walking on the left side of the roadway, and Morales admitted he could have walked there on the night of the accident."

- "At the time of the accident, Morales admits he was manipulating his cellphone for nonwork-related purposes (to search for his wife's contact information in order to call her)."

- "As Morales was walking along the right side of the roadway while using his cellphone, he was struck by Defendant Ruby Junewal."

- "Junewal was traveling approximately 10 miles per hour."

- "Junewal was driving a 1997 Honda Civic."

- "As he drove upon the roadway, Junewal admitted that he was moving food and/or other materials to the back of his vehicle."

- "Junewal admitted that, in doing so, he momentarily distracted himself by diverting his eyes from the roadway."

- "When he returned his eyes to the roadway, Junewal admitted he observed Morales walking in the path of his vehicle."

- "Junewal took evasive actions, but his vehicle contacted Morales at approximately ten miles per hour."

- "Other than this accident, no other vehicle-pedestrian accident has occurred at the Weatherford Facility since it opened in 2012."

[¶17]   From these undisputed facts the district court concluded the hazards complained of by Morales were open and obvious. The basis for the court's conclusion included that Morales conceded motor vehicles operating on the roadway at the Weatherford facility posed a known and obvious danger to pedestrians. Morales was asked, "Are you aware of dangers posed by traffic moving on roadways?" He responded, "Yes." He also was asked, "Would you say that the danger is obvious?" Again, Morales responded, "Yes."

[¶18]   While North Dakota has not addressed the question directly, sister jurisdictions have confirmed that vehicles operating in close proximity to pedestrians are an obvious danger as a matter of law. *See, e.g., Sundermann v. Hy-Vee, Inc.*, 947 N.W.2d 492, 506 (Neb. 2020) (noting that "the ordinary risks posed by common conditions in parking lots are familiar to drivers and pedestrians alike, including . . . the presence of moving vehicles"); *Rutledge v. Suffolk Court Apts.*, No. 345752, 2019 WL 6340949, at *4 (Mich. Ct. App. Nov. 26, 2019) (noting the "risk of being struck by a vehicle while walking through traffic is an open and obvious risk"); *Richardson v. Rockwood Ctr., L.L.C.*, 737 N.W.2d 801, 804 (Mich. Ct. App. 2007) (noting "the hazards posed to pedestrians by motor vehicles moving . . . is open and obvious"); *Craven v. Shively*, No. 102,209, 2010 WL 597018, at *2 (Kan. Ct. App. 2010) (noting it "would be obvious to the reasonable person that walking near

9

vehicular traffic would present a danger"); *Manley v. Wal-Mart Stores, Inc.*, 789 N.E.2d 631, 635 (Ohio Ct. App. 2003) (noting the "alleged danger presented by the traffic in the Wal-Mart parking lot was open and obvious"); *Duran v. Cinemark U.S.A., Inc.*, No. 05-99-01433-CV, 2000 WL 768640 at *5 (Tex. App. June 15, 2000) (noting "darkness is an obvious danger, and the danger of crossing a busy roadway, particularly in the dark, is a commonly understood danger"); *Hirabayashi v. N. Main Bar-B-Q, Inc.*, 977 S.W.2d 704, 708 (Tex. App. 1998) (noting "there was no duty to warn those invitees entering and exiting the restaurant of the known danger of crossing the roadway").

[¶19] Because the danger of walking on a road is open and obvious, these courts have concluded that landowners owe no duty to pedestrians who are walking in a roadway near vehicles. We join these jurisdictions in recognizing roadways present an open and obvious danger to pedestrians of being struck by vehicular traffic.

B

[¶20] Notwithstanding the open and obvious danger presented by the roadway, Morales argues Weatherford owed him a legal duty of care because Weatherford had reason to anticipate he would encounter the danger and be injured.

[¶21] Morales's argument rests on language from the Restatement (Second) of Torts § 343A(1) (1965), which states possessors of land are not liable for known or open and obvious dangers "unless the possessor should anticipate the harm despite such knowledge or obviousness." A comment to this section provides:

> "In the ordinary case, an invitee who enters land is entitled to nothing more than knowledge of the conditions and dangers he will encounter if he comes. If he knows the actual conditions, and the activities carried on, and the dangers involved in either, he is free to make an intelligent choice as to whether the advantage to be gained is sufficient to justify him in incurring the risk by entering or remaining on the land. The possessor of the land may reasonably assume that he will protect himself by the exercise of ordinary care, or that he will voluntarily assume the risk of harm if he does not succeed in doing so. Reasonable care on the part of the possessor therefore does not ordinarily require precautions, or even warning, against dangers which are known to the visitor, or so obvious to him that he may be expected to discover them."

Restatement (Second) of Torts § 343A(1), comment (e). Thus, as a general rule, a landowner has no duty to an invitee who enters with knowledge of a hazard on a premises.

10

That result is grounded in the idea that the invitee knows the risk of being on the land and stays there in the face of that knowledge. Upon making that informed and deliberate choice, the invitee has no claim against the landowner for any injury that might be sustained.

[¶22]  Comment (f) to Restatement (Second) of Torts § 343A(1) addresses a heightened duty when a dangerous condition will cause physical harm notwithstanding its obvious nature:

> "There are, however, cases in which the possessor of land can and should anticipate that the dangerous condition will cause physical harm to the invitee notwithstanding its known or obvious danger. In such cases the possessor is not relieved of the duty of reasonable care which he owes to the invitee for his protection. This duty may require him to warn the invitee, or to take other reasonable steps to protect him, against the known or obvious condition or activity, if the possessor has reason to expect that the invitee will nevertheless suffer physical harm."

Importantly, comment (f) gives examples of when the landowner's duty is not excused by an open and obvious danger:

> "Such reason to expect harm to the visitor from known or obvious dangers may arise, for example, where the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it. Such reason may also arise where the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk. In such cases the fact that the danger is known, or is obvious, is important in determining whether the invitee is to be charged with contributory negligence, or assumption of risk. (*See* §§ 466 and 496D.) It is not, however, conclusive in determining the duty of the possessor, or whether he has acted reasonably under the circumstances."

Section 343A and its approach to premises liability has been followed in North Dakota and elsewhere. *See, e.g., Wotzka v. Minndakota Ltd. P'ship*, 2013 ND 99, ¶¶ 12-13, 831 N.W.2d 722 (citing and applying section 343A).

[¶23]  Morales argues Weatherford had a duty to protect him from the open and obvious danger presented by the roadway because Weatherford should have anticipated he would choose to encounter it. Morales relies on this Court's decision in *Wotzka v. Minndakota*, 2013 ND 99. There, a guest sued a hotel after slipping and falling in a shower. *Id.* at ¶ 2.

11

The guest argued the hotel maintained a dangerous condition by failing to equip the shower with a handrail, a non-skid strip, or bathmat. *Id*. The district court granted summary judgment in favor of the hotel holding the hotel had no duty to warn of the open and obvious danger of a slippery shower or take steps to protect guests from the danger. *Id.* at ¶ 4. This Court reversed explaining that a landowner must take measures to protect against an open and obvious condition the landowner "could reasonably anticipate will cause harm." *Id.* at ¶ 16. The Court concluded a genuine issue of fact existed as to whether the hotel anticipated the harm created by the slippery shower and whether it failed to maintain the premises in a reasonably safe manner. *Id.* at ¶ 21. Contrary to Morales's argument, this Court has not decided landowners owe a duty to protect against open and obvious dangers whenever there is reason to expect a guest will chose to encounter them.

[¶24] We do not agree the presence of a roadway by itself gives rise to a duty on the part of the landowner to protect against the open and obvious danger it creates. Pedestrians routinely encounter roadways with traffic and protect themselves by being alert, watching and listening for traffic, and walking along the outside of the road in the direction of traffic. *See* N.D.C.C. § 39-10-33 (providing general rules of the road for pedestrians); *see also Sundermann*, 947 N.W.2d at 509 (describing "typical precautions" pedestrians take). "[E]ven when a land possessor is aware lawful visitors are choosing to encounter an obvious risk, it does not necessarily follow that the land possessor has reason to expect the lawful visitors will fail, or be unable, to protect themselves from that risk." *Sundermann*, at 509. Morales does not contend, and the undisputed facts do not suggest, that the roadway in this case presented a particular danger a pedestrian would be unable to avoid by using ordinary caution. In other words, there is nothing to suggest Weatherford should have anticipated this road was any more dangerous than other roadways pedestrians safely encounter every day. We need not address factual disputes concerning whether Morales actually failed to exercise ordinary caution because those issues are not relevant to Weatherford's duty and whether it had reason to anticipate harm would occur.

[¶25] Morales also contends Weatherford should have anticipated pedestrians would walk on the road in a distracted state and therefore the "forgetfulness or distraction" exception applies. Morales claims Weatherford knew employees walked on the roadway while "unfocused due to extreme tiredness" caused by working long hours and Weatherford "was aware of employee cellphone use" and its potential for distraction.

[¶26] The distraction exception is not available when the plaintiff is the source of inattention.

"A plaintiff should not be allowed to recover for self-created distractions that a defendant could never reasonably foresee. In order for the distraction to be foreseeable to the defendant so that the defendant can take reasonable steps to prevent injuries to invitees, the distraction should not be solely within the plaintiff's own creation. The law cannot require a possessor of land to anticipate and protect against a situation that will only occur in the distracted mind of his invitee."

*Whittleman v. Olin Corp.*, 832 N.E.2d 932, 936 (Ill. App. Ct. 2005); *see also Peters v. R. Carlson & Sons, Inc.*, 70 N.E.3d 196, 202 (Ill. App. Ct. 2016) (distraction must involve "special circumstances that would cause persons to be distracted at the site of the plaintiff's incident, not commonplace distractions that could occur anywhere"); *Sandoval v. City of Chicago*, 830 N.E.2d 722, 729-30 (Ill. App. Ct. 2005) (distraction exception inapplicable where a plaintiff is distracted by his or her own independent acts for which the defendant has no direct responsibility).

[¶27]   Morales provided no authority for his claim Weatherford is liable for the distraction he caused by walking on the roadway in a fatigued condition while using a cellphone. The only cases we find addressing distraction in the context of cellphone use hold it does not qualify as grounds for invoking the distraction exception to the open and obvious danger doctrine. *See Wilfong*, 930 N.E.2d at 519 ("The 'distraction exception' to the open-and-obvious doctrine did not apply because defendants did not cause the distraction of plaintiff talking on his cell phone while walking over the ruts and, further, because the distraction was not reasonably foreseeable by defendants."); *Whittinghill v. Starbucks Corp.*, No. 2-14-0663, 2015 WL 1291501, at *3 (Ill. App. Ct. Mar. 20, 2015) ("plaintiff's act of talking on his phone was nothing more than a self-created distraction"). We agree with these holdings and conclude Morales's distracted state did not create an exception to the open and obvious danger of walking in the wrong portion of a snow-covered roadway at night. The district court did not err dismissing Morales's claims.

V

[¶28] The district court did not err when it granted summary judgment holding Weatherford owed no duty of care to Morales. The single judgment dismissing with prejudice all of the claims in this case is affirmed.

[¶29]   Jon J. Jensen, C.J.
        Daniel J. Crothers
        Lisa Fair McEvers

13

Jerod E. Tufte

**Bahr, Justice, concurring.**

[¶30]   I agree with the majority's conclusion based on this Court's adoption and retention of Restatement (Second) of Torts § 343A(1), our cases applying the open and obvious danger doctrine, and the specific facts of this case.

[¶31]   In 2004, Justice Maring suggested this Court "abolish the 'open and obvious' doctrine and apply our modified comparative fault law." *Groleau v. Bjornson Oil Co.*, 2004 ND 55, ¶ 27, 676 N.W.2d 763 (Maring, J., concurring in part and dissenting in part). In that case, the majority did not address what impact, if any, the North Dakota Legislature's adoption of comparative negligence in 1973 and modified comparative fault in 1987 have on the judicially created open and obvious danger doctrine. *See* 1973 N.D. Sess. Laws ch. 78, § 1 (repealed by 1987 N.D. Sess. Laws ch. 404, § 13, as amended by 1993 N.D. Sess. Laws ch. 324, § 1); *and* 1987 N.D. Sess. Laws ch. 404. In *Wotzka v. Minndakota Ltd. P'ship*, 2013 ND 99, ¶ 11 n.1, 831 N.W.2d 722, this Court also did not address the issue, pointing out Wotzka did "not argue that the adoption of comparative fault abolished the open and obvious danger doctrine under North Dakota law."

[¶32]   I understand the Court's reluctance to address an issue not raised and briefed by the parties. However, because this Court judicially adopted the open and obvious danger doctrine, in my opinion this Court should determine the appropriateness of retaining the doctrine considering the subsequent legislative enactments. Barry L. Johnson, *Oklahoma's Open and Obvious Danger Doctrine: Where Does It Stand, and Where Should It Go?*, 46 Okla. City U. L. Rev. 183, 201 (2022) (explaining some jurisdictions have "completely abandoned the no-duty approach to open and obvious dangers" on the ground "the traditional rule is inconsistent with the adoption of comparative negligence principles"). I express no opinion on how that issue should be resolved, only that this Court should directly address it.

[¶33]   Douglas A. Bahr

14