Tufte, Justice.
 

 *345
 
 [¶ 1] Christian Bjerk, son of appellants Keith Bjerk and Debra Bjerk (the "Bjerks") died from an overdose after consuming drugs at a house owned by Kenton Anderson. The district court granted summary judgment dismissing the Bjerks' premises liability and negligent entrustment claims, and the Bjerks appealed. We conclude that the facts viewed in a light most favorable to the Bjerks do not support a conclusion that Anderson owed Christian Bjerk a duty of care under a premises liability theory. We also conclude the Bjerks' negligent entrustment fails as a matter of law because only personal property, and not the real property at issue here, is a potential basis for a negligent entrustment claim. We affirm.
 

 I
 

 [¶ 2] On June 11, 2012, eighteen-year-old Christian Bjerk died as a result of consuming illegal drugs in a Grand Forks house owned by Anderson. In granting summary judgment, the district court described the events leading to Christian Bjerk's death:
 

 The Defendant Kenton G. Anderson is, and was on June 10 and 11, 2012, the sole owner of the residential property ... [in] Grand Forks, Grand Forks County, North Dakota.
 

 Anderson had not resided at the described property from 2009 to 2013. The property was occupied on June 10 and 11, 2012 by Julie Thorsen, her son [Nicholas "Nick"] Thorsen and her daughter Megan Thorsen.... [T]he father of Megan Thorsen's unborn child, also resided there. Julie Thorsen is Anderson's ex-girlfriend as of 2009, but she was and remains his employee. There is no written lease between them and rentals were not paid as a condition of its use.
 

 ....
 

 Christian drove Wesley Sweeney ["Sweeney"] and C.J. (a minor) in Christian or Bjerk's vehicle, to a Grand Forks location, between approximately 1:00 a.m. and 2:00 a.m., June 11, 2012, where Sweeney and C.J. purchased and received acid and ketamine, the latter a hallucinogenic dissociative drug.
 

 Christian subsequently drove Sweeney, C.J., and the illegal drugs to Anderson's described property, where the three of them met with Nick Thorsen, Shelby Braaten and other individuals. Christian, Sweeney and C.J. consumed or ingested the ketamine drug in the basement area during the early hours on June 11, 2012. According to Shelby Braaten, the three individuals did not consume the acid.
 

 Anderson was not present at the property at the time of the drug consumption, and was not aware of the drug purchase, consumption and gathering of the individuals. Julie Thorsen was sleeping in the upper, or ground level, of the property at the time.
 

 Shelby Braaten and Nick Thorsen contributed money to purchase the acid only, and were not aware of: the ketamine purchase or its identity, Christian and C.J.'s involvement, or that Christian and C.J. would later appear at the Anderson property.
 

 Christian, Sweeney and C.J. became loud and obnoxious, and began exhibiting strange behavior, all within ten minutes of consumption of the ketamine.
 

 *346
 
 Nick Thorsen directed Christian, Sweeney and C.J. to leave the property to avoid waking Julie Thorsen, and they promptly left.
 

 Christian later collapsed where his body was found on the morning of June 11, 2012 on a sidewalk near the Anderson property.
 

 Julie Thorsen informed Anderson later in the morning of June 11, 2012 of the previous night's drug activity and Christian's death.
 

 Anderson subsequently ordered Nick Thorsen to leave the residence.
 

 [¶ 3] In 2014, the Bjerks commenced this wrongful death action against Anderson, asserting negligence claims based on premises liability. The Bjerks' complaint alleged that Anderson had failed to exercise reasonable care to keep a house owned and controlled by him "in reasonably safe condition," "free from illegal and dangerous activity," and "free of drugs and illegal substances." They alleged Anderson failed to use reasonable care in maintaining the premises in a reasonable and safe condition in view of all circumstances, including the "likelihood of injury to another, foreseeability of the injury, the seriousness of the injury, and the burden of avoiding the risk of injury." They also alleged Andersen failed to use reasonable care "to warn entrants to protect an entrant from an unreasonable risk of harm caused by the activities taking place on the premises."
 

 [¶ 4] In 2016, Anderson moved the district court for summary judgment. Anderson argued he had no control over his residence on June 11, 2012, because he had not lived there for approximately three years. Anderson asserted his ex-girlfriend Julie Thorsen and her children, including Nick Thorsen, occupied the home. He also argued he had no special relationship with Christian Bjerk because undisputed evidence showed Bjerk had only been a guest of the other occupants at the residence and was not Anderson's guest. The Bjerks opposed the motion and requested additional time for discovery. After a hearing, the court allowed the parties to file supplemental memoranda after completing the additional discovery. The court subsequently entered its memorandum decision and order, granting summary judgment and dismissing the Bjerks' claims.
 

 [¶ 5] The district court concluded the Bjerks had not provided sufficient admissible evidence to raise a genuine issue of material fact whether Anderson breached any duty of care to Christian Bjerk under any theory pleaded. The court further concluded that reasonable minds could draw but one conclusion from the facts and inferences that Anderson either did not owe or did not breach any duty of care to Christian Bjerk.
 

 [¶ 6] The district court specifically rejected the Bjerks' argument that Christian Bjerk's death was foreseeable by Anderson and that Anderson had a duty to prevent it. The court concluded that the only reasonable view of the facts was that Anderson no longer occupied the property and Anderson's ex-girlfriend Julie Thorsen and her children had possession and control of the home. The court also explained that Nick Thorsen allowed dangerous drug activity on the premises and that although Anderson knew of Nick Thorsen's criminal history, this history did not include either drug trafficking or acid or ketamine possession. The court concluded the only reasonable view of the evidence was that Christian Bjerk had himself delivered and consumed the drugs and had not been harmed by the property's physical condition. The court concluded there were no genuine issues of material fact because Anderson did not transport the drugs to
 
 *347
 
 his property and did not provide the drugs to Christian Bjerk.
 

 [¶ 7] The district court also rejected the Bjerks' argument that Anderson had a duty to protect Christian Bjerk on the basis of an open and obvious dangerous drug activity and condition at the residence. The court stated that Anderson had "limited understanding" of Nick Thorsen's criminal history, had no knowledge of the events of June 10 and 11, 2012, and was neither present nor informed as to what was occurring at that time. The court stated Christian Bjerk had been an active participant in securing the illegal drugs and concluded reasonable minds could reach only one conclusion-consuming illegal drugs is an obviously dangerous activity in which Christian Bjerk voluntarily engaged.
 

 [¶ 8] Lastly, the district court rejected the Bjerks' claim for negligent entrustment, concluding no factual or legal support existed to show Anderson had entrusted Christian Bjerk with any personal property.
 

 II
 

 [¶ 9] Our standard for reviewing the district court's summary judgment decision under N.D.R.Civ.P. 56 is well established:
 

 Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. A party moving for summary judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. In determining whether summary judgment was appropriately granted, we must view the evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the record.
 

 APM, LLLP v. TCI Ins. Agency, Inc.
 
 ,
 
 2016 ND 66
 
 , ¶ 7,
 
 877 N.W.2d 34
 
 (quoting
 
 JPMorgan Chase Bank v. Skoda
 
 ,
 
 2014 ND 67
 
 , ¶ 5,
 
 844 N.W.2d 870
 
 ). When ruling on summary judgment, the district court may not draw inferences, make findings on disputed facts to support the judgment, weigh the evidence, or determine credibility.
 
 Saltsman v. Sharp
 
 ,
 
 2011 ND 172
 
 , ¶ 18,
 
 803 N.W.2d 553
 
 . "Summary judgment is appropriate against a party who fails to establish the existence of a factual dispute as to an essential element of his claim and on which he will bear the burden of proof at trial."
 
 APM
 
 , at ¶ 7 (quoting
 
 Perius v. Nodak Mut. Ins. Co.
 
 ,
 
 2010 ND 80
 
 , ¶ 9,
 
 782 N.W.2d 355
 
 ). Whether a district court properly granted summary judgment presents a question of law, which we review
 
 de novo
 
 on the entire record.
 

 Id.
 

 III
 

 A
 

 [¶ 10] Under North Dakota premises liability law, "general negligence principles govern a landowner's duty of care to persons who are not trespassers on the premises."
 
 M.M. v. Fargo Pub. Sch. Dist. #1
 
 ,
 
 2010 ND 102
 
 , ¶ 9,
 
 783 N.W.2d 806
 
 (quoting
 
 Schmidt v. Gateway Cmty. Fellowship
 
 ,
 
 2010 ND 69
 
 , ¶ 8,
 
 781 N.W.2d 200
 
 ). "Actionable negligence consists of a duty, breach, and an injury that was proximately caused by the breach."
 
 Iglehart v. Iglehart
 
 ,
 
 2003 ND 154
 
 , ¶ 11,
 
 670 N.W.2d 343
 
 (citing
 
 Diegel v. City of West Fargo
 
 ,
 
 546 N.W.2d 367
 
 , 370 (N.D. 1996) ).
 

 Generally, negligence actions involve issues of fact and are inappropriate for summary judgment.
 

 *348
 

 Perius
 
 ,
 
 2010 ND 80
 
 , ¶ 13,
 
 782 N.W.2d 355
 
 . However, "[i]n a negligence action, whether or not a duty exists is generally an initial question of law for the court."
 
 Rawlings v. Fruhwirth
 
 ,
 
 455 N.W.2d 574
 
 , 577 (N.D. 1990). If the existence of a duty depends on resolving factual issues, the facts must be resolved by the trier of fact.
 
 Saltsman v. Sharp
 
 ,
 
 2011 ND 172
 
 , ¶ 11,
 
 803 N.W.2d 553
 
 . Issues of fact may become issues of law if reasonable persons could reach only one conclusion from the facts.
 

 Id.
 

 APM
 
 ,
 
 2016 ND 66
 
 , ¶ 8,
 
 877 N.W.2d 34
 
 ;
 
 see also
 

 Iglehart
 
 , at ¶ 11 ("[T]he existence of a duty is usually a preliminary question of law, unless it depends on facts that must be determined by the fact finder.").
 

 [¶ 11] In
 
 Forsman v. Blues, Brews & Bar-B-Ques, Inc.
 
 ,
 
 2012 ND 184
 
 ,
 
 820 N.W.2d 748
 
 , we discussed our premises liability law in the context of a person's obligations imposed under N.D.C.C. §§ 9-10-01 and 9-10-06 :
 

 Under N.D.C.C. § 9-10-01, "[e]very person is bound without contract to abstain from injuring the person or property of another or infringing upon any of that person's rights." "A person is responsible ... for an injury occasioned to another by the person's want of ordinary care or skill in the management of the person's property or self." N.D.C.C. § 9-10-06. Under premises liability law, landowners owe a general duty to lawful entrants to maintain their property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to another, the seriousness of the injury, and the burden of avoiding the risk. If a landowner permits dangerous conditions to exist on the premises the landowner must take reasonable measures to prevent injury to those whose presence on the property reasonably can be foreseen. The owner of any property must use it with an ordinary degree of care so as not to damage others, exercising caution and reasonable care under the circumstances.
 

 Forsman
 
 , at ¶ 13 (citations and quotation marks omitted);
 
 see also
 

 Schmidt
 
 ,
 
 2010 ND 69
 
 , ¶ 8,
 
 781 N.W.2d 200
 
 ("[A] landowner or occupier of premises generally owes a duty to lawful entrants to exercise reasonable care to maintain the property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to another, the seriousness of injury, and the burden of avoiding the risk.").
 

 [¶ 12] The district court concluded as a matter of law that Anderson did not owe a duty to Christian Bjerk under a premises liability theory. The Bjerks' theories rely on a subset of premises liability relating to dangerous activities conducted on the property. We have not previously addressed whether a landowner owes a duty of care to persons on his property for harm caused by a dangerous activity where the landowner was not engaged in the activity.
 

 B
 

 [¶ 13] We have recognized a duty of care under a premises liability theory in the context of a variety of potentially dangerous conditions.
 
 Wotzka v. Minndakota Ltd.P'ship
 
 ,
 
 2013 ND 99
 
 ,
 
 831 N.W.2d 722
 
 (hotel shower);
 
 Schmidt
 
 ,
 
 2010 ND 69
 
 ,
 
 781 N.W.2d 200
 
 (hole in parking lot);
 
 Groleau v. Bjornson Oil Co.
 
 ,
 
 2004 ND 55
 
 ,
 
 676 N.W.2d 763
 
 (gas pump island).
 

 [¶ 14] The Bjerks assert that Anderson owed a duty of care to Christian Bjerk that, if breached, would extend liability to Anderson for Christian's death. In their complaint, the Bjerks allege Anderson: (1) "failed to exercise reasonable care to keep the areas owned and controlled by him free from illegal and dangerous activity";
 

 *349
 
 (2) "failed to exercise reasonable care to keep the areas owned and controlled by him free of drugs and illegal substances"; and (3) "failed to use reasonable care to warn entrants to protect an entrant from an unreasonable risk of harm caused by the activities taking place on the premises." In short, the Bjerks argue that Anderson had a duty to stop illegal drug activity on his property.
 

 [¶ 15] In several cases, we have described premises liability claims as encompassing harm caused by dangerous activities conducted by the property owner.
 
 Groleau
 
 ,
 
 2004 ND 55
 
 , ¶ 16,
 
 676 N.W.2d 763
 
 (stating that "when the landowner conducts dangerous activities or permits dangerous conditions to exist on the premises the landowner must take reasonable measures to prevent injury"). These cases all alleged dangerous conditions, and none asserted a dangerous activity as the basis for the negligence claim.
 
 See
 

 Doan v. City of Bismarck
 
 ,
 
 2001 ND 152
 
 , ¶ 13,
 
 632 N.W.2d 815
 
 ;
 
 O'Leary v. Coenen
 
 ,
 
 251 N.W.2d 746
 
 , 749-50 (N.D. 1977) (citing
 
 Scurti v. City of New York
 
 ,
 
 40 N.Y.2d 433
 
 ,
 
 387 N.Y.S.2d 55
 
 ,
 
 354 N.E.2d 794
 
 , 798 (1976) ). The fundamental distinction is one between active negligence (dangerous activities) and passive negligence (dangerous conditions).
 
 Scurti
 
 ,
 
 387 N.Y.S.2d 55
 
 ,
 
 354 N.E.2d at
 
 797 (citing
 
 Barry v. New York Cent. & Hudson Riv. R.R. Co.
 
 ,
 
 92 N.Y. 289
 
 (1883) (imposing duty of reasonable care in moving defendant's trains through public crossing);
 
 Byrne v. New York Cent. & Hudson Riv. R.R. Co.
 
 ,
 
 104 N.Y. 362
 
 ,
 
 10 N.E. 539
 
 (1887) (applying duty to warn of defendant's train approaching crossing) ).
 

 [¶ 16] In
 
 Forsman
 
 ,
 
 2012 ND 184
 
 ,
 
 820 N.W.2d 748
 
 , we remanded a premises liability claim arising out of dangerous activities at a party. The defendant held an after-hours party at its bar in which it had an open bar for employees and guests, permitted shot-drinking contests, continued to serve obviously-intoxicated guests, and attempted but failed to eject an intoxicated guest who was causing problems.
 
 Id.
 
 at ¶¶ 2, 4. That intoxicated guest assaulted the plaintiff.
 
 Id.
 
 at ¶ 2. We held these facts sufficient to establish a duty of care for premises liability and remanded for further proceedings as to whether the duty had been breached.
 
 Id.
 
 at ¶ 14. Unlike here, in
 
 Forsman
 
 , the owner of the premises was present and engaging in the activities that caused the harm; thus its "want of ordinary care or skill in the management of [its] property," N.D.C.C. § 9-10-06, was directly implicated.
 

 [¶ 17] Under current North Dakota premises liability law, Anderson owed a duty to maintain his property in a safe condition,
 
 see, e.g.
 
 ,
 
 Wotzka,
 

 2013 ND 99
 
 , ¶ 9,
 
 831 N.W.2d 722
 
 , and if we apply the language in our cases regarding dangerous activities, he also owed a duty not to engage in dangerous activities on his property that might result in foreseeable harm to other people who enter the property. No case has been cited to us, and we have found none that would extend premises liability to a person in control of property who was not engaged in the activity that caused the harm. There is no evidence or reasonable inference that Anderson was himself engaging in the dangerous activity of drug use on the property. The Bjerks ask us to extend our premises liability law beyond the owner-conducted activities we have previously recognized to activities conducted by others who enter or occupy the property.
 

 [¶ 18] We have previously considered several factors in determining whether a duty of care is imposed by law if the essential prerequisite of control is shown:
 

 The court must balance the following factors when determining the existence of duty in each particular case: (1) foreseeability
 
 *350
 
 of harm to plaintiff; (2) degree of certainty that plaintiff suffered injury; (3) closeness of connection between defendant's conduct and injury suffered; (4) moral blame attached to defendant's conduct; (5) policy of preventing future harm; (6) extent of burden to defendant and the consequences to the community of imposing a duty to exercise care with resulting liability for breach; and (7) availability, cost, and prevalence of insurance for the risk involved.
 

 Hurt v. Freeland
 
 ,
 
 1999 ND 12
 
 , ¶ 13,
 
 589 N.W.2d 551
 
 (quoting W. Page Keeton et al.,
 
 Prosser and Keeton on the Law of Torts
 
 § 53, at 359 n.24 (5th ed. 1984) ).
 

 [¶ 19] The district court correctly identified and applied these factors to determine there is no duty here under a premises liability theory alleging dangerous activities. We agree that these factors weigh against imposing the duty asserted here. The class of injury was not reasonably foreseeable from the knowledge that the record would support Anderson had at the relevant time. The defendant was not himself conducting a dangerous activity-the activity on Anderson's property that harmed Christian Bjerk was Christian's own voluntary consumption of illegal drugs. No evidence suggests the harm caused by the drugs was different as a result of the conditions of the house where they were consumed. Here there was not a close connection between Anderson's conduct and the harm to Christian. The prospect of preventing future harm by imposing a duty here is low in comparison to the large burdens that would be placed on those who control property through ownership or lease. We agree with the district court's thorough consideration of these
 
 Hurt
 
 factors and its conclusion that they weigh significantly against imposing the duty asserted here.
 

 [¶ 20] An analogous assertion of premises liability was considered in
 
 Castaneda v. Olsher
 
 ,
 
 41 Cal.4th 1205
 
 ,
 
 63 Cal.Rptr.3d 99
 
 ,
 
 162 P.3d 610
 
 (2007). Castaneda brought a premises liability claim against the owner of the mobile home park where he lived after he was shot and injured during a gang confrontation at another nearby residence in the park.
 

 Id.
 

 at 613
 
 . Testimony indicated that prior to the shooting, people dressed like gang members congregated at the other residence and there had been repeated drug sales at the park.
 

 Id.
 

 at 614
 
 . Castaneda argued that the park owner had a duty not to rent to the apparent gang members, to remove them once others complained, or to provide security guards to reduce the risk of harm.
 

 Id.
 

 at 615
 
 . Applying the factors outlined by Prosser & Keeton (quoted above at ¶ 18), the court defined the scope of the duty under consideration by determining the specific measures the plaintiff asserted the defendant should have taken to prevent the harm.
 

 Id.
 

 at 615-16
 
 . Considering the "extraordinarily burdensome nature of the duty plaintiff seeks to impose and its likely social cost," the court concluded it would recognize such a duty to evict a dangerous tenant only where the observed behavior made harm to neighbors or others "highly foreseeable."
 

 Id.
 

 at 619-20
 
 . Despite evidence of prior drug transactions on the property and two shooting incidents involving other residents, the court concluded as a matter of law that there was not such a pattern of prior similar incidents from which the property owner should have found the shooting highly foreseeable.
 

 Id.
 

 at 621
 
 .
 

 [¶ 21] As in
 
 Castaneda
 
 , the Bjerks assert Anderson had a duty to stop dangerous criminal activity on his property by removing Nick Thorsen from the property or by warning his guests of the dangers they might face as a result of Nick Thorsen's drug activity. This asserted duty to remove may be more burdensome where
 
 *351
 
 there is a lease, but the asserted duty to stop the dangerous activity of drug use by removing known or suspected drug users is a significant burden regardless of the status of the occupant to be removed. Whether Anderson leased the house is not an undisputed fact here, but we conclude that fact is not material because there is no duty whether or not there was a lease.
 

 [¶ 22] Although not specifically argued by the Bjerks, Anderson may have other means of stopping dangerous drug activity, such as calling the police or directly controlling Nick's behavior at the house. If recognized, such duties would essentially make Anderson a mandatory reporter of all suspected dangerous illegal activity or convert him from a landowner into something akin to a police officer or probation officer with respect to those on his property. The evidence and reasonable inferences do not support a finding that Anderson had the kind of knowledge that would make highly foreseeable the type of harm that was suffered by Christian Bjerk.
 

 [¶ 23] The inferences required to establish foreseeability of the harm that befell Christian Bjerk are attenuated. Anderson knew Nick Thorsen had been in trouble in juvenile court, including for drug offenses, and had been in drug treatment. Anderson should have foreseen that Nick would use drugs again, because drug users commit new drug offenses at a predictably high rate. Anderson should have foreseen (or observed indications of) Nick using drugs at the house where his mother also lived. Anderson should have foreseen that Nick would use drugs not only alone but also with others who joined him at the house. Anderson should have foreseen that an individual who used drugs with Nick might consume an unusually dangerous combination or amount of drugs and suffer physical harm or death. The Bjerks argue that owing to this attenuated chain of foreseeability, Anderson had a duty to manage the activities on his property in a way that would protect any entrants to the house from the risks of drug use. The asserted duty of care is not limited to Nick, who Anderson knew had recently been a drug user, but also to anyone who might associate with Nick and voluntarily consume illegal drugs at the house.
 

 [¶ 24] What is the appropriate standard of care for a person in control of property to protect a person from his own unwise, criminal choice to use drugs on the property? Imposition of a duty on these facts is a policy-laden question better suited to legislative judgments. To be sure, courts must sometimes consider public policy in determining whether a duty of care applies in a particular situation.
 
 See
 

 Hurt
 
 ,
 
 1999 ND 12
 
 , ¶ 13,
 
 589 N.W.2d 551
 
 ;
 
 O'Leary
 
 ,
 
 251 N.W.2d at 749
 
 . To impose the duty asserted by the Bjerks would place on those in possession or control of property a powerful incentive to refuse entry or occupancy to anyone with a history of drug use. A landowner does not reasonably expect to become the police officer or probation officer for all who live on-or merely enter-his property.
 

 [¶ 25] Before we would impose such a duty of care, we would require a higher degree of foreseeability arising from specific knowledge and prior events.
 
 See
 

 Castaneda
 
 ,
 
 63 Cal.Rptr.3d 99
 
 ,
 
 162 P.3d at 616-17
 
 . Here, there is no showing that Anderson personally facilitated drug use at the house or knowingly permitted the house's occupants to maintain the house for ongoing drug use. There is no showing that Anderson knew of previous parties or gatherings at the house at which drugs were used. To impose premises liability under the circumstances alleged here would charge Anderson not only with control over the premises but also with control over and responsibility for harm
 
 *352
 
 caused by the criminal actions of people on the premises.
 

 [¶ 26] In addition to asserting a duty to control or remove, the Bjerks assert Anderson had a duty to warn. A "duty to warn is predicated upon the understanding that individuals who have superior knowledge of dangers posed by a hazard must warn those who lack similar knowledge; when an individual is already aware of danger, a warning is not necessary."
 
 Iglehart
 
 ,
 
 2003 ND 154
 
 , ¶ 17,
 
 670 N.W.2d 343
 
 . No specific warning is suggested that Anderson might have given to Christian Bjerk that would have averted the danger posed by Christian's use of illegal drugs. To be sure, a duty to warn would be less onerous than a duty to exclude or control Nick and thereby protect Nick's friends and associates from harming themselves at the house. Considering the obvious nature of the risks of illegal drug use, we decline to impose on landowners a duty to warn entrants on their property that consuming illegal drugs is a dangerous activity.
 

 [¶ 27] The Bjerks argue
 
 Lewis v. Burke
 
 , No. CV106011976,
 
 2014 WL 7497472
 
 , 2014 Conn. Super. LEXIS 2926 (Conn. Super. Ct. November 28, 2014) is comparable to this case and should be considered persuasive. The plaintiff in
 
 Lewis
 
 was a guest at a house party when another guest began shooting a handgun, causing injury to the plaintiff.
 
 Id.
 
 at *1, 2014 Conn. Super. LEXIS 2926 at *1. The defendant homeowners moved for summary judgment, arguing that they orally leased the house to their adult son and thus lacked the control over the property required for premises liability.
 
 Id.
 
 The district court denied summary judgment, concluding there was a genuine issue of fact on the issue of control where the parents were present at the party and knew of their son's history of hosting unsafe parties at the house.
 
 Id.
 
 at *1, *2-3, 2014 Conn. Super. LEXIS 2926 at *1, *6-7.
 

 [¶ 28]
 
 Lewis
 
 is readily distinguished from the circumstances here. There is no evidence that Anderson was at the house at the time Christian Bjerk was present and consuming drugs. There is no evidence that Anderson knew of prior instances when others had joined Nick Thorsen to use drugs at the house. One might infer that Anderson should have known there were drugs in the house on at least an occasional basis, because the paraphernalia found by police the day after Bjerk's death may have been indicative of how the house had been kept previously. Also supporting that inference were Nick's prior drug charges and treatment history, and Anderson's own statement that he knew the Thorsen kids "were into drugs." Indeed, for purposes of summary judgment, Anderson conceded that drugs had been consumed on the premises. The evidence and reasonable inferences support some knowledge of drug activity by Nick Thorsen, but not enough to support a high degree of foreseeability that Christian Bjerk's drug use and resulting harm would occur at the house.
 

 [¶ 29] There is a great public interest in reducing the scourge of addiction. People in drug treatment and other stages of recovery need a place to live if they are to end the cycle of addiction. In the face of potential premises liability, the only practical response Anderson or another landowner would have in these circumstances would be to evict or otherwise remove a drug user from the property at the first sign of use. Absent a clear signal from the legislature that N.D.C.C. § 9-10-06 is intended to extend premises liability to make a landowner liable under these circumstances, we are unwilling to extend the duty of care as the Bjerks request. The Bjerks have not raised a genuine issue
 
 *353
 
 of fact that Anderson engaged in, facilitated, or was willfully blind to ongoing, dangerous activity. Absent that, a landowner or other person in control of property should not bear tort liability for self-inflicted injuries to individuals who lack perfect compliance with the interventions of juvenile court staff, adult probation officers, and other criminal justice and drug treatment professionals. Without a heightened foreseeability requirement, our premises liability law would significantly deter the salutary work carried out by a private homeless shelter, a relative, or anyone who takes in an addict who is trying to find recovery. No genuine issue of fact exists on any recognized duty of care, and there are no inferences which may be reasonably drawn from the evidence to indicate a genuine issue of material fact. Summary judgment in favor of Anderson on premises liability was appropriate.
 

 IV
 

 [¶ 30] The Bjerks argue Anderson is liable for their son's death under the doctrine of negligent entrustment. They contend Anderson negligently entrusted the house to Julie Thorsen under the facts of this case, given the actual knowledge and information Anderson had, or had available to him, on the night of Christian Bjerk's death.
 

 [¶ 31] This Court has recognized a cause of action for negligent entrustment under the Restatement (Second) of Torts § 390 (1965) :
 

 One who supplies directly or through a third person
 
 a chattel for the use of another
 
 whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.
 

 Gillespie v. Nat'l Farmers Union Prop. & Cas. Co.
 
 ,
 
 2016 ND 193
 
 , ¶ 14,
 
 885 N.W.2d 771
 
 (emphasis added);
 
 see also
 

 Collette v. Clausen
 
 ,
 
 2003 ND 129
 
 , ¶ 13,
 
 667 N.W.2d 617
 
 ;
 
 Barsness v. General Diesel & Equip. Co., Inc.
 
 ,
 
 383 N.W.2d 840
 
 , 842 (N.D. 1986). The term "chattel" has been defined as: "Movable or transferable property; personal property; esp., a physical object capable of manual delivery and not the subject matter of real property."
 
 Black's Law Dictionary
 
 286 (10th ed. 2014).
 

 [¶ 32] While we have recognized a negligent entrustment claim, this Court has not previously recognized the cause of action for negligent entrustment of chattel to include real property. Moreover, the Bjerks' complaint in this case did not plead a claim for negligent entrustment, but rather pleaded negligence claims for premises liability. Even assuming the claim has been properly asserted, we conclude the Bjerks have not provided sufficient persuasive authority for us to expand our negligent entrustment law to encompass this situation.
 

 [¶ 33] We conclude the district court properly rejected the Bjerks' argument asserting negligent entrustment against Anderson.
 

 V
 

 [¶ 34] The judgment is affirmed.
 

 [¶ 35] Jerod E. Tufte
 

 Daniel J. Crothers
 

 Lisa Fair McEvers
 

 I concur in the result.
 

 William A. Neumann, S.J.
 

 [¶ 36] The Honorable William A. Neumann, Surrogate Judge, sitting in place of Jensen, J., disqualified.
 

 VandeWalle, Chief Justice, concurring and dissenting.
 

 *354
 
 [¶ 37] I concur in the result of that portion of the majority opinion affirming dismissal of the Bjerks' claim for negligent entrustment. I respectfully dissent from that portion of the majority opinion which affirms the dismissal of the Bjerks' premises liability claim.
 

 [¶ 38] The majority concludes that premises liability for incidents taking place on the premises extends only to those incidents in which the owner is present and engaging in the activities that cause the harm, noting that in
 
 Forsman v. Blues, Brews & Bar-B-Ques, Inc.,
 

 2012 ND 184
 
 ,
 
 820 N.W.2d 748
 
 , where we reversed and remanded for trial on the premises liability claim, the owner was present and engaging in the activities that caused the harm. Indeed, those were the facts but the person engaging in those activities would be liable under general negligence principles, regardless of whether or not that person owned the premises, yet we nevertheless remanded so "Forsman may pursue her negligence claim for premises liability."
 
 Id.
 
 at ¶ 14.
 

 [¶ 39] While our previous decisions relating to premises liability for injuries due to activities on the premises rather than structural defects may have involved facts in which the owner was present and engaged in the activity which caused the harm, the majority has cited to no cases from this jurisdiction which specifically rejected liability where the owner was not present and engaged in the harmful activity. Rather, the majority concludes that any extension of premises liability is a matter of public policy for the Legislature to decide. I submit the Legislature has already spoken by enacting N.D.C.C. § 9-10-06 codified in N.D.C.C. ch. 9-10, entitled OBLIGATIONS IMPOSED BY LAW:
 

 Willful acts and negligence-Liability.
 
 A person is responsible
 
 not only for the result of the person's willful acts
 
 but also for an injury occasioned to another by the person's want of
 
 ordinary care or skill in the management of the person's property
 
 or self. The extent of the liability in such cases is defined by sections 32-03-01 through 32-03-18.
 

 (Emphasis supplied).
 

 [¶ 40] The statute provides that a person is responsible not only for willful acts but for injury resulting from that person's ordinary negligence. Negligence can result from inaction as well as action. The plain language of the statute dispels the "active" versus "passive" dichotomy which the majority, relying on cases from other jurisdictions, appears to adopt. It is not necessary, as the majority suggests, for further legislative action in order to hold the owner of premises responsible for harm to a person as a result of activities on premises which have become a haven for the sale and use of opioids or other drugs-an unfortunate occurrence all too common in today's society-if the owner of the premises has knowledge of those facts but does nothing to prevent those activities from continuing. Rather, the role of the Legislature, if it decides the statute is too broad, would be to limit the scope of the statute to avoid the results speculated in the majority opinion.
 

 [¶ 41] The evidence of the use of the premises for unlawful drug purposes and the evidence of the owner's knowledge of those facts is sparse. However, I believe the inferences which could be drawn from
 
 *355
 
 those facts are sufficient to prevent summary judgment. To the extent the trial court as well as the majority engaged in their own fact finding rather than allowing a jury to do so, I also dissent.
 

 [¶ 42] I would reverse the summary judgment dismissing the Bjerks' premises liability claim and remand for trial on that issue.
 

 [¶ 43] Gerald W. VandeWalle, C.J.