20230272
FILED
IN THE OFFICE OF THE
CLERK OF SUPREME COURT
04-19-2024
STATE OF NORTH DAKOTA

# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2024 ND 72

William Schmidt,                                     Plaintiff and Appellant

v.

Hess Corporation and

Basin Safety Consulting Corporation,          Defendants and Appellees

## No. 20230272

Appeal from the District Court of McKenzie County, Northwest Judicial District, the Honorable Robin A. Schmidt, Judge.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Opinion of the Court by Crothers, Justice.

Jeffrey S. Weikum (argued), Bismarck, ND, and Justin L. Williams (on brief), Corpus Christi, TX, for plaintiff and appellant.

Amy M. Oster, Bismarck, ND, for defendant and appellee Hess Corporation.

Courtney A. Presthus, Dickinson, ND, for defendant and appellee Basin Safety Consulting Corporation.

**Crothers, Justice.**

[¶1] William Schmidt appeals from judgments entered in favor of Hess Corporation and Basin Safety Consulting Corporation. The district court dismissed Schmidt's negligence and premises liability claims against Hess and Basin Safety on summary judgment ruling neither owed him a duty of care. We reverse the judgment in favor of Hess concluding genuine issues of material fact exist on the question of whether Hess owed Schmidt a duty of care. We affirm the judgment in favor of Basin Safety.

I

[¶2] Hess hired Tesoro Logistics to provide crude oil hauling services. Their "Trucking Service Agreement" states none of Tesoro's personnel "shall be deemed to be, in fact or in law, a servant, agent or employee of Hess." Schmidt was employed by Tesoro. He sued Hess and Basin Safety alleging he was injured while working for Tesoro at a worksite owned and operated by Hess. He claimed Hess required him to be connected to breathing air equipment while performing his work. He alleged Basin Safety installed the equipment at the worksite. He claimed the equipment caused him to trip and fall injuring his arm and shoulder. He brought claims for negligence and premises liability against both Hess and Basin Safety. The claims against each were identical. Schmidt's general negligence claim alleged the defendants failed to:

> "(1) provide Schmidt with a safe environment in which to work, equipped with safe respirator equipment;
> (2) ensure that all safety equipment was in proper working condition and ensuring that all safety measures and monitoring were understood, available and utilized by all personnel employed by the defendants;
> (3) ensure the proper maintenance and training in the use of personal protective equipment as well as workers demonstrating proficiency in using PPE and in making sure on-site monitoring and detection systems were in use;

(4) ensure that the Breathing Air system was designed, installed and procedures were in place that allowed workers to safely travel up and down the stairs;
(5) ensure all tanks, lines, equipment, devices and objects were clear of hazardous materials; and
(6) ensure all tanks, ladders, lines, equipment, devices and objects are up to industry standards and code."

Schmidt's premises liability claim alleged the defendants "had a duty to provide and/or maintain" the premises "in a reasonable safe condition" including "the tank and ladder," and "respirator system and/or ladder system" and their failure to do so caused his injuries.

[¶3] Basin Safety and Hess filed motions for summary judgment. Hess argued it did not owe a duty of care to Schmidt because he was an independent contractor. Basin Safety argued it did not owe a duty of care to Schmidt because it had no contractual relationship with Schmidt and it did not exercise any control over him or the worksite. Schmidt argued Hess controlled the manner in which he performed his work by requiring him to use the air equipment and thus his status as the employee of an independent contractor was not dispositive. Schmidt also argued Basin Safety owed him a duty of care, regardless of contractual privity or a lack of control at the worksite, because Basin Safety designed and installed the air equipment. Schmidt asserted genuine issues of material fact precluded summary judgment for each party.

[¶4] The district court first granted Hess summary judgment and later granted Basin Safety summary judgment. The court determined it was undisputed that "Schmidt was required by Hess to wear an air hose, but Hess did not require the method of using the air hose." The court ruled Hess did not owe Schmidt a duty of care because providing the air hose without "specifying the procedures" for its use or "mandating specific use" was not sufficient to establish Hess retained control over Schmidt. The court also determined Basin Safety did not owe a duty of care to Schmidt because Basin Safety did not provide training regarding the air hose or have any control over the worksite. The court noted Schmidt admitted his premises liability claim against Basin

Safety "is not appropriate." The court entered judgment in favor of each defendant. Schmidt appeals.

## II

[¶5]   We apply the following standard when reviewing appeals from summary judgment decisions:

> "Summary judgment under N.D.R.Civ.P. 56 is a procedural device for the prompt resolution of a controversy on the merits if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. Summary judgment is appropriate if the issues in the case are such that the resolution of any factual disputes will not alter the result. Whether the district court properly granted summary judgment is a question of law that we review de novo on the entire record. On appeal, this Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law."

*Powell v. Statoil Oil & Gas LP*, 2023 ND 235, ¶ 7, 999 N.W.2d. 203 (quoting *Vic Christensen Min. Tr. v. Enerplus Res. (USA) Corp.*, 2022 ND 8, ¶ 8, 969 N.W.2d 175). "In determining whether summary judgment was appropriately granted, we must view the evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the record." *Bjerk v. Anderson*, 2018 ND 124, ¶ 9, 911 N.W.2d 343 (quoting *APM, LLLP v. TCI Ins. Agency, Inc.*, 2016 ND 66, ¶ 7, 877 N.W.2d 34).

[¶6]   Summary judgment "rarely should be granted in negligence cases." *Doan ex rel. Doan v. City of Bismarck*, 2001 ND 152, ¶ 9, 632 N.W.2d 815. To prove negligence, a plaintiff must establish the existence of a duty, breach of that duty, and an injury proximately caused by the breach of duty. *Bjerk*, 2018 ND 124, ¶ 10. The duty element of a negligence claim is a question of whether the relationship between the parties gave rise to a legal obligation on the part of the defendant for the benefit of the plaintiff. *Devore v. Am. Eagle Energy Corp.*, 2020 ND 23, ¶ 18, 937 N.W.2d 503. A defendant cannot be held liable for

3

negligence if he or she did not have a duty to protect the plaintiff from injury. *Id.* Whether a duty exists is a question of law for the court to decide and, if the existence of a duty depends on factual determinations, that becomes a question for the trier of fact. *Doan*, at ¶ 12. If the duty issue depends on factual determinations, the appropriate procedure is to instruct the jury as to the presence or absence of a duty if certain facts are found. *Groleau v. Bjornson Oil Co., Inc.*, 2004 ND 55, ¶ 6, 676 N.W.2d 763.

## III

[¶7] Schmidt argues the district court erred when it ruled Hess did not owe him a duty of care. He advances a theory of liability based on control Hess purportedly exercised over his work. He asserts Hess had a duty to exercise this control with reasonable care. He claims he met his burden of demonstrating a genuine issue of material fact on this question.

[¶8] An employer generally is not liable for injuries caused by an independent contractor's negligence. *Pechtl v. Conoco, Inc.*, 1997 ND 161, ¶ 9, 567 N.W.2d 813. "An employer who does not retain or actually exercise any control or supervision over a project or the employees of an independent contractor, but, instead, is concerned primarily only with the finished product should not be held liable for the negligence of the independent contractor or its employees." *Schlenk v. Northwestern Bell Telephone Co., Inc.*, 329 N.W.2d 605, 612 (N.D. 1983); s*ee also* Restatement (Second) of Torts § 409 (1965). An exception to the general rule exists when an employer retains control over the manner in which the independent contractor performs the work. *Devore*, 2020 ND 23, ¶ 13; *see also* Restatement (Second) of Torts § 414 (1965). Under this exception, the employer is not vicariously liable for the independent contractor's acts or omissions. *Pechtl*, at ¶ 11. The employer is liable for breaching his or her own duty. *Id.* The employer's duty in this context is to exercise its control with reasonable care. *Devore*, at ¶ 13; *see also Madler v. McKenzie Cnty.*, 467 N.W.2d 709, 711 (N.D. 1991). This duty extends to an independent contractor's employees. *Madler*, at 711 ("[A]n employer of an independent contractor who retains control of part of the work owes a duty of care to the independent contractor's employees to exercise the retained control with reasonable care.").

4

"[T]he employer of the independent contractor owes a duty to the independent contractor's employees to exercise retained control with reasonable care." *Kristianson v. Flying J Oil & Gas, Inc.*, 553 N.W.2d 186, 189 (N.D. 1996).

[¶9] For a duty to arise under a theory of retained control there must be "at least some degree of control over the manner in which the work is done." *Devore*, 2020 ND 23, ¶ 14 (quoting *Fleck v. ANG Coal Gasification Co.*, 522 N.W.2d 445, 448 (N.D. 1994)). An employer's act of inspecting the work or making "suggestions which need not be followed" will not create a duty. *Fleck*, at 448. The employer must have retained control over the "method, manner, and operative detail of the work" making the contractor "not entirely free to do the work in his own way." *Id.* Control may be demonstrated by contractual provisions or through the employer's actual control of the contractor's work at the jobsite. *Rogstad v. Dakota Gasification Co.*, 2001 ND 54, ¶ 16, 623 N.W.2d 382.

[¶10] Merely providing equipment does not constitute control. In *Fleck v. ANG Coal Gasification Co.*, 522 N.W.2d at 448, we held an employer's conduct in furnishing safety gear to an independent contractor did not constitute control giving rise to a duty of care when there was no evidence the employer "required" the items be worn. The employer's provision of the equipment and its "suggestion" or "recommendation" that the equipment be used did not constitute control. *Id.* at 448-49. Similarly, in *Kristianson v. Flying J Oil & Gas,* 553 N.W.2d at 187, an employee of an independent contractor was injured when he fell from a tank at a wellsite. He argued the employer retained control over his work when it selected the tank that stored the fluid he was testing. *Id.* at 190. We held the evidence did not show the employer exercised control sufficient to give rise to a duty of care. *Id.* We noted there was no evidence the employer supervised the independent contractor's use of the tank or required it be used. *Id.* We explained "a duty arises only if the employer, in addition to providing the equipment, also directly supervises or controls its use, or instructs the independent contractor's employee on use of the equipment." *Id.*

[¶11] Schmidt asserts Hess retained control over his work by requiring him to use air equipment installed at the worksite. He relies on Hess's contractor

5

handbook, deposition testimony provided by Hess's former safety coordinator, and correspondence between Hess and Tesoro. The handbook requires contractors to use respiratory equipment when atmospheric conditions necessitate it "or when otherwise required by Hess." The safety coordinator, Sid Lauver, testified Hess's procedure did not allow Schmidt to access part of the worksite without using the air hose. Lauver was shown a picture and asked:

> "Q. . . . What is the little chain and the sign for? What's the purpose of that?
>
> A. Okay. This here signifies that Hess's procedures are you're not allowed to go past that without being—having air. So my statement earlier about them being able to go up without wearing an air mask and stuff, that would not be correct. That would be against Hess procedure.
>
> Q. Okay. Okay. And I understand that you qualified that statement before, so I'm not holding you to it. So now understanding that, that wouldn't have been a workable option to go up there without the air hose?
>
> A. No."

Schmidt also relies on emails between a Hess representative and a Tesoro supervisor that were sent roughly a month before the accident. The emails indicate the Tesoro supervisor reported concerns about the safety of a "supplied air hose reel" noting "[d]rivers feel the current set up is creating a trip hazard and are wondering if they can go back to tying the hose off." The Hess representative responded: "we've come to the consensus that Hess has provided the breathing air system for Tesoro and the equipment must be used as designed and installed by Basin Safety." Hess instructed Tesoro: "If the hose is snagging and pulling drivers backwards they may consider pulling out excess hose prior to going up the stairs, and if the drivers hang the hose over the stairs when coming down it will not be in front of them to create a tripping hazard."

[¶12] The district court, in its statement of undisputed facts, noted "Schmidt was required by Hess to wear an air hose, but Hess did not require the method of using the air hose." The court held providing the air hose but not specifying procedures for its use was insufficient to establish control. We conclude the court erred on this point. Schmidt has marshalled evidence, when viewed in a light most favorable to him, creating a fact issue concerning whether Hess retained control over the method, manner, and operative detail of the work. There is evidence indicating Hess required the Tesoro drivers to use the air hose when accessing part of the worksite, prohibited them from using the hose in a manner they preferred ("tying the hose off"), and required it be used "as designed and installed by Basin Safety." Whether Hess exercised control over Schmidt's work "is a factual question about which reasonable persons could differ, and, therefore, it should be submitted to the jury." *Madler*, 467 N.W.2d at 714. If Hess exercised control, it had a duty to do so with reasonable care.

[¶13] Having determined a fact issue exists precluding summary judgment on the question of retained control, we turn to Hess's arguments specifically addressing Schmidt's premises liability claim. Hess asserts a premises liability claim by an independent contractor against an employer is "not viable under North Dakota law" because an employer does not owe a duty to independent contractors to maintain a safe worksite. Hess cites various cases where this Court has held no duty of care is owed by an employer to protect an independent contractor from worksite hazards. However, we reached these holdings after first determining the employer did not exercise control over the independent contractor's work. *See Rogstad*, 2001 ND 54, ¶ 36; *Pechtl*, 1997 ND 161, ¶ 26; *Kristianson*, 553 N.W.2d at 191; *Fleck*, 522 N.W.2d at 449.

[¶14] We have not expressly decided whether an employer of an independent contractor may be liable for injuries sustained by the contractor or its employees under a premises liability theory. At least two federal courts have anticipated how we would decide the issue. *See Armes v. Petro-Hunt, LLC,* No. 4:10-cv-078, 2012 WL 1493740 (D.N.D. Apr. 27, 2012) ("Based on *Pechtl*, the Court finds that the Armes' claim for premises liability against Petro-Hunt is not a viable claim in North Dakota."); *see also Mathes v. Patterson-UTI Drilling Co. L.L.C.*, 44 F. Supp. 3d 691, 700 (S.D. Tex. 2014) (analyzing premises

7

liability in this context and concluding "the only way Denbury would have a duty to Mathes is if it controlled the means, manner, or operative detail of the work performed").

[¶15] Under premises liability law, landowners have a general duty to maintain their premises in a reasonably safe condition for lawful entrants. *Woody v. Pembina Cnty. Annual Fair and Exhibition Ass'n*, 2016 ND 56, ¶ 4, 877 N.W.2d 70. Premises liability is a theory of negligence. *See Double Quick, Inc. v. Moore*, 73 So.3d 1162, 1165 (Miss. 2011). A premises liability claim is different than a claim for injuries based on negligent activity. *Hutson v. Pate*, 216 N.E.3d 1085, 1093 (Ill. App. Ct. 2022).

> "Negligence in the context of a negligent activity claim means simply doing or failing to do what a person of ordinary prudence in the same or similar circumstances would have done or not done. Negligence in the premises liability context generally means failure to use ordinary care to reduce or eliminate an unreasonable risk of harm created by a premises condition which the owner or occupier of land knows about or in the exercise of ordinary care should know about."

*City of El Paso v. Collins*, 440 S.W.3d 879, 887 (Tx. Ct. App. 2013) (internal citation omitted).

[¶16] The closest we have come to addressing the viability of a premises liability claim in the context of a lawsuit by an independent contractor against an employer is *Pechtl v. Conoco*, 1997 ND 161. The owner of a wellsite hired an independent contractor. *Id.* at ¶ 3. The independent contractor's employee was injured at the wellsite. *Id.* He sued the property owner alleging it had a duty to provide him with a safe workplace. *Id.* at ¶ 4. The trial court granted summary judgment ruling the property owner did not owe a duty of care because it did not control the independent contractor's work. *Id.* at ¶ 5. We agreed noting the contractor "failed to identify any specific evidence" the property owner exercised control over the work at the wellsite. *Id.* at ¶ 15. We then addressed the contractor's claim that the property owner "had a non-delegable duty regarding conditions at the worksite." *Id.* at ¶ 20. We rejected this argument reasoning it was "governed by our resolution of the issue of

8

retained control." *Id.* at ¶ 21. Contrary to Hess's assertion, we have not declared a property owner may never owe a duty to an independent contractor to maintain a safe worksite.

[¶17] Other courts have analyzed the issue and concluded such a duty may exist under certain circumstances. A leading case in Minnesota explained an employer's "personal negligence, in an appropriate case, may consist of breach of a duty to exercise reasonably careful supervision of a jobsite where employees of the independent contractor are working when the employer retains control or some measure of control over the project." *Conover v. N. States Power Co.*, 313 N.W.2d 397, 401 (Minn. 1981). The Supreme Court of California has explained: "unless a landowner retains control over any part of the contractor's work and negligently exercises that retained control in a manner that affirmatively contributes to the injury, it will not be liable to an independent contractor or its workers for an injury resulting from a known hazard on the premises." *Gonzales v. Mathis*, 493 P.3d 212, 216 (Cal. 2021) (internal citation omitted). Texas appears to have codified a version of this principle. *See Rosa v. Mestena Operating, LLC*, 461 S.W.3d 181, 184 (Tex. App. 2014) (noting under Texas law a property owner is not liable to contractors for injuries unless he exercised control over the work and had actual knowledge of the danger resulting in the injury).

[¶18] We decline Hess's invitation to adopt a broad rule relieving property owners of liability to independent contractors for dangerous worksite conditions under all circumstances. Our general retained-control rule applies in this context. A property owner may be held liable to an independent contractor and its employees for injuries resulting from hazards at a workplace when the property owner retains control over the work. This holding does not displace our general premises liability jurisprudence, including rules concerning control of the premises, open and obvious dangers, and the like. Here, after determining Hess did not exercise control of Schmidt's work, the district court held "North Dakota law does not allow employees of independent contractors to sue for premises liability in situations like this case." As we have explained, Schmidt has presented evidence creating a genuine issue of

material fact on the question of retained control. For this reason, we reverse the court's judgment dismissing Schmidt's claims against Hess.

IV

[¶19] Schmidt argues the district court erred when it granted summary judgment holding Basin Safety did not owe him a duty of care. Schmidt claims the "direct actions of Basin Safety in negligently designing, installing, and maintaining the air system are the basis of the claims asserted by Schmidt." Basin Safety interprets Schmidt's claim as a product liability action, and Basin Safety raises various issues and defenses as to why it cannot be liable for injuries resulting from use of the equipment. Schmidt does not respond to those defenses or address those issues. Schmidt instead argues his "claims are not based on products liability, but negligence."

[¶20] Our product liability laws, N.D.C.C. ch. 28-01.3, apply to "any action brought against a manufacturer or seller of a product" regardless of the "substantive legal theory or theories" on which the action is brought. N.D.C.C. § 28-01.3-01(2). A "manufacturer" is a person or entity who "designs, assembles, fabricates, produces, constructs, or otherwise prepares a product or a component part of a product" prior to its sale. N.D.C.C. § 28-01.3-01(1). Negligence, in the context of products liability, "focuses on whether or not the conduct of the manufacturer or seller falls below the standard of reasonable care." *Messer v. B & B Hot Oil Serv.*, 2015 ND 202, ¶ 10, 868 N.W.2d 373 (quoting *Oanes v. Westgo, Inc.*, 476 N.W.2d 248, 253 (N.D. 1991)). A manufacturer owes a duty of care to ensure its product is "reasonably safe for the use for which it was intended." *Johnson v. Am. Motors Corp.*, 225 N.W.2d 57, 62 (N.D. 1974) (quoting *Lindenberg v. Folson*, 138 N.W.2d 573, 575 (N.D. 1973)). Liability may arise for personal injury caused by, among other acts, a manufacturer's "construction," "design," "installation," "preparation," or "assembly," of a product or "failure to provide proper instructions for the use of any product." N.D.C.C. § 28-01.3-01(2).

[¶21] Schmidt has expressly and repeatedly disavowed any claim against Basin Safety under a products liability theory. Absent a duty as a manufacturer of the equipment at issue, which Basin Safety argues is

10

nonexistent for reasons uncontested by Schmidt, we are not persuaded Basin Safety owed Schmidt a duty of care. Schmidt claims Basin Safety "was aware of the tripping hazard that the air hose presented and chose to do nothing about it" and Basin Safety "failed to provide policies and procedures on the safest way to use the air hose breathing system." However, we agree with the district court's determination that "there is insufficient evidence to establish that Basin Safety had any control over the job site." We conclude, as a matter of law, Schmidt failed to establish Basin Safety owed him a duty of care.

V

[¶22] The judgment in favor of Basin Safety is affirmed. The judgment in favor of Hess is reversed. The case is remanded for further proceedings.

[¶23] Jon J. Jensen, C.J.
      Daniel J. Crothers
      Lisa Fair McEvers
      Jerod E. Tufte
      Douglas A. Bahr